Donald Gerald RODGERS, et al. *v.* McRAVEN'S CHERRY PICKERS, INC., et al.

89-218                                          788 S.W.2d 227

Supreme Court of Arkansas
Opinion delivered April 23, 1990
[Rehearing denied May 29, 1990.]

*Davidson Law Firm, P.A.*, by: *Charles P. Boyd, Jr.*; and *Wilson, Engstrom, Corum & Dudley*, by: *Wm. R. Wilson, Jr.*, and *Gary D. Corum*, for appellants.

*Odell Pollard, P.A.*, for appellee.

DAVID NEWBERN, Justice. This is an appeal from a defendant's verdict in a personal injury case. Donald Gerald Rodgers, Georgia Paulette Rodgers, and Eddie A. Crisco, the appellants, contended the trial court erred by not imposing sanctions sufficient to remedy misconduct on the part of counsel for Charles McRaven, Jr., the appellee, and for not granting a new trial on the basis of some of the same alleged incidents of misconduct by counsel. We hold it has not been demonstrated that the trial court abused its discretion, and thus the judgment is affirmed.

The case arose from injuries which occurred to Donald Rodgers and Eddie Crisco when they were being lifted by a boom and bucket device, commonly called a "cherry picker," which was mounted on a truck, while working on electrical wiring at a hospital in North Little Rock. The bucket in which they were riding fell when the arms which held the bucket on the boom broke. Mr. Rodgers was rendered a paraplegic, and Mr. Crisco severely injured his right arm. Mrs. Rodgers' claim was for loss of consortium.

Rodgers and Crisco were working for Donham Industrial Electric Co., Inc. (Donham), when the accident occurred. Their case theory was strict liability of the supplier of the cherry picker. There was evidence that the arms holding the bucket in which they were riding failed because the plywood of which the arms were composed had rotted and broken. The plywood was encased in fiberglass which prevented observation of the disintegration of the wood.

The cherry picker had been purchased by Donham in 1982 from McRaven Cherry Picker, Inc. McRaven Cherry Picker, Inc., was a defendant in the case, but the case was submitted to the jury on the question of liability only of Charles McRaven, Jr., based on evidence that the corporation was no more than a conduit for McRaven's personal business. The need to "pierce the corporate veil" gave rise to the first issue. Other facts will appear as necessary to discussion of each stated point of appeal.

## 1. Discovery violation; the corporate by-laws

It is undisputed that the Rodgerses and Crisco had sought, through one or another discovery device, all documents relevant to the corporation, McRaven Cherry Picker, Inc. There had been an ongoing conversation between counsel for McRaven, Odell Pollard, and counsel for the Rodgerses and Crisco, Gary D. Corum, about the obtaining of various documents. Mr. Pollard let Mr. Corum know that some documents sought were stored at a farm belonging to yet another lawyer whose firm had represented McRaven at the time the corporation was formed. At a pre-trial hearing held to decide a summary judgment motion, Mr. Pollard, referring to the stored documents, stated that the minutes of the corporation were there and "they have the by-laws," although previously Pollard had assured counsel that there were no by-laws.

In his opening statement, Charles P. Boyd, Jr., another attorney for the Rodgerses and Crisco, told the jury that McRaven's Cherry Picker, Inc., had no corporate by-laws. During cross-examination of Charles McRaven, Mr. Corum asked, ". . . did you know . . . that the corporation is supposed to have by-laws to operate by?" McRaven answered: "Yes, sir." Mr. Corum asked: "Well, did you get any by-laws?" Answer: "I'm sure I did." Question: "Do you have them?" At that point, Mr. Pollard produced the by-laws from a document case, held them up, and interjected: "Counsel, I have them here for you."

Counsel for the Rodgerses and Crisco moved that McRaven's answer be struck for failure to comply with discovery requests, pointing out that Mr. Pollard's action had seriously undermined their credibility with the jury. They sought, in effect, to have the issue of liability directed in their favor and the case submitted to the jury on the issue of damages only. In the alternative they moved to strike the "corporate entity" defense. They moved, as a second alternative, that Pollard not be allowed to refer to the by-laws. The latter alternative was withdrawn from the motion.

In response to the motion, the trial court observed that the by-laws had been received in Mr. Pollard's office during the week before the trial commenced. The court referred to Mr. Pollard's

failure to supplement discovery responses by making counsel for the Rodgerses and Crisco aware of the availability of the by-laws as an "oversight." The court concluded that the Rodgerses and Crisco had suffered "some prejudice" as a result of the incident and reviewed the options available under Ark. R. Civ. P. 37. The court concluded that the request to, in effect, direct a verdict for the plaintiffs on liability would be "much too harsh," and denied the motion to strike the defense of corporate entity for the same reason. The court remarked that the existence or nonexistence of corporate by-laws had to do with only one item bearing on whether the corporate veil should be pierced.

Concluding the hearing, the court stated:

> I believe that the better method of handling this, what I consider to be a delicate situation, at last as far as the Court is concerned, is to instruct the jury that in their deliberation they are not to consider that any corporate by-laws existed for McRaven Cherry Picker, Inc., not in the presence of the jury. That position being taken, the Court feels that the by-laws may not be proffered. I will not tell the jury this, but the by-laws may not be proffered into evidence by the defendant in the presence of the jury, may be proffered if so desired by the defendant for the record outside the hearing and presence of the jury.

The court noted that the Rodgerses and Crisco had not sought a mistrial, and said, ". . . and so I am of the opinion that the sanction, if you call it that, is adequate under the circumstances." Mr. Pollard then inquired whether the court was going to instruct the jury that McRaven Cherry Picker, Inc., had no by-laws, and the court then said, "I guess that was the essence. What I want to say to them is they are not to consider in their deliberations any corporate by-laws existed. . . ."

After a break in the proceedings in chambers, William R. Wilson, another attorney for the Rodgerses and Crisco, objected to the court's ruling. He pointed out that the issue of the by-laws was already before the jury, and would have to be discussed further on cross-examination. Without waiving the earlier request for sanctions he requested that the court say to the jury, "the jury is instructed that plaintiffs' counsel had not been advised of the existence of corporate by-laws until this morning

during Mr. Corum's examination of Mr. McRaven." The court did exactly that.

After the trial, the motion to strike the answer was renewed. In his letter opinion denying the motion, the court referred to Mr. Pollard's production of the by-laws in the presence of the jury as having been done "rather dramatically." It was recited that counsel for the Rodgerses and Crisco had declined to seek a mistrial and had declined the court's offer to preclude reference to the by-laws, and concluded that the instruction given to the jury was "the best option available to the Court under the circumstances."

The argument before us on this point is that the court should have granted the motion to strike the answer. The only authority cited on the point by the Rodgerses and Crisco is Ark. R. Civ. P. 37(b)(2)(B) and (C) which permit the trial court to refuse to allow a defense or to strike a pleading as sanctions for failure to provide discovery in response to a court order. Those subsections are not directly applicable here because they deal with sanctions to be used for failure to comply with a court order. Subsection (d) of the rule provides that the sanctions listed in (b)(2)(A), (B), or (C) may be imposed for failure of a party to appear for a deposition, failure to serve answers or objections to interrogatories, or failure to serve a written response to a request for inspection. *See* R. Haydock and D. Herr, *Discovery Practice*, §§ 8.6, 8.7 (2d ed. 1988). Even if subsection (d) had been relied upon here, it has not been shown that any of the specific events mentioned in (d) occurred, unless the failure to supplement amounts to failure to serve a written response to a request for inspection.

We have upheld the trial courts' exercise of discretion in granting severe Rule 37 sanctions for flagrant discovery violations. See, *e.g., Cagle* v. *Fennel*, 297 Ark. 353, 761 S.W.2d 926 (1988), in which we held it was not an abuse of discretion for the trial court to dismiss an action for failure to appear and failure to pay expenses ordered by the court, and we noted it was not required that the party seeking sanctions prove a willful and deliberate discovery violation. In *Harper* v. *Wheatley Implement Co., Inc.*, 278 Ark. 27, 643 S.W.2d 537 (1982), we upheld dismissal of certain claims on the basis of Rule 37(d) but noted

that, "[t]his extraordinary remedy should be used sparingly and only when other measures fail because of the inherent danger of prejudice." In the *Harper* case we decided it was error for the court to have refused to allow the offending party to present evidence on one point.

Counsel for the Rodgerses and Crisco agree that the standard of review is whether the court abused its discretion in refusing to grant their motion to strike McRaven's answer. We agree with the trial court's assessment that some prejudice was caused as a result of this failure, but we cannot gainsay his determination that the sanction sought by the Rodgerses and Crisco was too harsh. Their complaint was not that the failure to supplement with the by-laws prevented them from proving their case. As the court noted, the presence or lack of presence of by-laws was only one indication of legitimate corporate existence. In addition, counsel for the Rodgerses and Crisco referred to the document later in support of their argument that the corporate veil should be pierced, pointing out that the by-laws were only pro forma. Their complaint was, and remains, that they were made to look incompetent in the eyes of the jury by the production of the by-laws by opposing counsel after they announced that there were no by-laws.

The trial court was placed by counsel for the Rodgerses and Crisco in a "nearly all or nothing" position. It became his duty to decide whether the prejudice inflicted by the actions of Mr. Pollard warranted the extreme sanction of granting victory to the Rodgerses and Crisco on the question of liability. He was in a better position than we to judge according to the circumstances of the trial, and we decline to say he abused his discretion.

### 2. Closing argument

#### a. Absent parties

Donham as well as Bill and Susie Derden were at one point named defendants. The Derdens allegedly had owned an interest in McRaven Cherry Picker, Inc.. The actions against Donham and the Derdens were, by consent of counsel, severed from this case. The court granted a motion in limine which precluded Pollard from mentioning the Derdens and Donham "as parties" to the lawsuit. Upon inquiry, it was made clear that reference to

them could be made with respect to their possible fault if the evidence supported it.

In his closing argument Mr. Pollard said:

Are you curious why Mr. McRaven and only Mr. McRaven is here in court? What about the manufacturer? What about Bill Derden? What about Susie Derden? What about McRaven Cherry Picker, Inc., the corporation? What about Donham Industrial Electric?

Counsel for the Rodgerses and Crisco objected, and the court gave this instruction:

Ladies and gentlemen of the jury, the jury is instructed to disregard reference to either Mr. Bill Derden or Suzie Derden or Donham Electric Company as parties in this lawsuit.

The Rodgerses and Crisco argue that this constituted a direct violation of the court's order and that the mention of Donham raised the specter of the Rodgerses and Crisco having received workers' compensation benefits. They contend they are thus entitled to have McRaven's answer struck or at least a new trial.

The sole authority cited in support of this argument is *Ed Ricke & Sons v. Green*, 468 So. 2d 908 (Fla. 1985). There a plaintiff had settled its personal injury claim against Dade County but had reserved its right to pursue its claim against other defendants. In a subsequent action the court granted a motion in limine precluding any party, attorney, or witness from making known to the jury that there had been a settlement with Dade County. Defense counsel, in closing argument, said: "Now there's going to be some other person responsible. . . . I would like for you to ask him [w]hy Dade County is not a defendant. . . ." The trial court denied a mistrial motion, concluding that the "empty chair" argument, (asserting that some other party might be responsible or liable for the injury) was valid. The Florida Supreme Court held the argument improper because it went beyond the typical "empty chair" statement and "emphasized that there had been a prior suit against that empty chair."

The question in this case is far closer. We have no statement that someone else is "going to be" responsible. The

"what about" questions did not imply that some other party had already settled or otherwise assumed responsibility for the damages alleged, but the reference to McRaven being the only defendant in court was improper. That was the conclusion of the trial court, and he instructed the jury to disregard references to the Derdens and Donham as parties. In his letter opinion denying the motion for new trial, the court stated that "the admonition to the jury was sufficient to remove any prejudice which may have been created by" the argument. In the absence of some authority we could construe to the contrary, we decline to hold the trial court erred.

### b. Jury nullification

On behalf of McRaven, Mr. Pollard sought summary judgment on the basis that McRaven was not a "supplier" as that term is used in the law of strict liability for a defective product. The motion was denied. The court instructed the jury in accordance with AMI 1108 on the issue of strict liability. In his closing argument, Mr. Pollard said:

> I suggest to you that the products liability law that the Court has read to you some instructions about, which Mr. Corum made reference to in his argument, should not and [was] not intended to apply to Mr. McRaven or to McRaven Cherry Picker, Inc., as the facts show in this case. First, why did I say that? Here's a business that owns one product, one unit. And it's rented. True, that's being in business to that extent. But it's putting one product and one product only in the marketplace for use. It's not Avis or Hertz Rental Car, or what have you, that's rented literally thousands and thousands of manufactured products and I think there's a difference.

Thereafter, the colloquy was as follows:

> Mr. Wilson: I object to this argument on the grounds it's an incorrect statement of the law.
>
> The Court: I don't think he tried to state the law. I didn't hear him try to state the law.
>
> Mr. Pollard: I'm arguing the law.
>
> Mr. Wilson: If it please the Court —

Mr. Pollard: I'm stating it's my personal belief.

Mr. Wilson: Your Honor, may we approach the bench?

The Court: Yes, that objection would be sustained.

Mr. Pollard: I will not pursue it, then. Another reason why the product liability law doesn't apply, first to McRaven Cherry Picker, Inc., and then I will talk as applies to Mr. McRaven himself.

Counsel for the Rodgerses and Crisco contend that the court overruled their objection to a misstatement of the law but granted their objection to the "personal belief" remark. In his letter opinion the court stated he had sustained the objection to the argument that the products liability law should not apply to McRaven. Although it is not all that clear, the interpretation of counsel for the Rodgerses and Crisco is a fair one. It is apparent, however, that the court concluded that Mr. Pollard was arguing that the facts would not support application of the strict liability law because McRaven was not a supplier, and that is clearly the tack he took after an objection was sustained in the presence of the jury.

In support of their argument on this point that the trial court erred in failing to strike the answer and not granting a new trial, the Rodgerses and Crisco cite *Ball* v. *Cameron*, 282 Ark. 357, 668 S.W.2d 942 (1984), where we dealt with a similar argument. In opening statement in a tort automobile wreck trial the attorney for the defendant stated, "[t]he law . . . is suspicious of claims like this. And they offset the advantages that the Plaintiff has by putting certain burdens on the Plaintiff." An objection was sustained out of the hearing of the jury. A request for a cautionary instruction and later motion for mistrial were denied. In closing, the attorney repeated the "suspicious law" misstatement. We wrote:

> If a trial judge has undertaken to correct some impropriety by instructing the jury to disregard it, we accord great latitude to the trial court in ruling on a motion for a mistrial and reverse only if there is a manifest prejudice. *Back* v. *Duncan*, 246 Ark. 494, 438 S.W.2d 690 (1969). However, when as here, an attorney

> makes an improper statement of the law, and the attorney is made aware of the impropriety by a court ruling, but the trial judge does not undertake to correct the matter by instructing the jury to disregard it, and the attorney then substantially repeats the statement, it occurs to us that prejudice has most likely occurred and we do not hesitate to reverse and remand for a new trial.

Here, the objection was sustained in the presence of the jury, and Mr. Pollard acknowledged it by moving to a different tack.

In *Buckeye Cellulose* v. *Vandament*, 256 Ark. 434, 508 S.W.2d 49 (1974), an electrician injured when he fell from a ladder due to an electrical shock was awarded a $157,000 jury verdict. In closing, the attorney for the electrician argued, "if you decide the amount and there's some argument about how much, we ask you to decide the larger amount because his Honor there, if you give him too much, can cut it down, but if you give him too little, he can't increase it." The court granted a request that the jury be instructed to disregard the statement, and later in chambers a mistrial was requested. The court denied the motion, and we reversed. The trial court had clearly allowed a misstatement of the law to mislead the jury. That did not occur here.

The Rodgerses and Crisco also cite *White* v. *Gallion*, 523 S.W.2d 769 (Mo. App. 1975), where the trial court was reversed for permitting defense counsel to argue that a duty of a driver to keep a careful lookout in a automobile-pedestrian accident was not included in the law. The argument arose over the defense counsel's interpretation of an instruction that said that a verdict must be given to the pedestrian if the driver knew or could have known of the pedestrian's position of immediate danger and could have avoided injury by slowing down. The appellate court held that the duty to keep a proper lookout was implicit in that instruction and that counsel's arguments constituted reversible error. Again, the trial court had apparently ignored a misstatement of law.

Misstatements of the law apparently fall into two categories, statements which contradict or are contrary to the enunciated law and statements which may correctly set out the law but which go beyond the case at hand and permit an impermissible legal conclusion. It was not wrong for the trial

court to conclude that Pollard did neither. Emphasis on the facts was a permissible interpretation of Mr. Pollard's remarks, and that was clearly his approach after the issue was raised in the jury's presence. We find nothing which would require us to hold the trial court abused its discretion in refusing to grant a new trial on this point.

### 3. Improperly suggestive questions

Mr. Pollard asked questions of the employees of Donham concerning possible abuse of the equipment by the lifting of objects heavier than permitted by the weight specifications for the equipment. Most of these questions were answered with a firm negative. However, Loren Ross was asked on cross-examination about an incident when he saw the equipment used to lift a roll of cable weighing "something less than one thousand pounds." The appellant objected, arguing the question should be tailored to inquire whether or not the bucket was used or if some other part of the truck, apparently referring to a winch, was used to lift the cable. The objection was overruled. The question was phrased to ask the witness if he had knowledge that an employee of the company had used the "unit" to lift the cable. The witness answered the question affirmatively. The use of the term "unit" included the truck, the winch attached to the truck, and the cherry picker attached to the truck. The inclusive term was not improper, simply general. The answer to the question gave rise to a possible inference that the bucket was thus used. A followup question was objected to as follows, "[w]e want an objection on whether he used the truck or the bucket to lift this wire, or lift this cable."

The entire line of inquiry and the way that specific question was phrased are now challenged as having created a false impression and interjected false statements unsupported by any evidence concerning utilization of the cherry picker. The record is devoid of any testimony to support the conclusion that the bucket was used to lift objects beyond the weight specifications. On re-direct examination, Mr. Ross testified that the winch would have been used to lift the cable, not the cherry picker.

*Tomeo* v. *Northern Valley Swim Club*, 493 A.2d 544 (N.J. Super. 1985), is cited. There a defendant's counsel in summation said that the plaintiff was trying to take away the home of a little

old grandmother in suing for damages. An instruction was given to the jury that they should not let sympathy influence their decision. The jury returned a defendant's verdict and the issue was raised on appeal. The court wrote:

> In order to win a verdict based upon sympathy, defendant's attorney displayed three generations of a family who own defendant and operate its business, and falsely implied to the jury that they would face financial ruin should there be a verdict for plaintiff. The fact is that defendant is fully insured for any reasonable verdict that the jury could have returned.

In concluding that a new trial was warranted the court said:

> When the jury learns of a fact known to be false which is irrelevant to the issues being tried but has the clear capacity to turn them for or against a party, the jury must be told the truth promptly and cautioned that the fact is not to be considered in their deliberations. If, however, the judge concludes that a cautionary instruction will not overcome the prejudicial effect of telling the jury the truth, he must declare a mistrial.

We do not have that situation here. The witnesses denied abusing the equipment, in response to both direct and cross-examination. While the questions were suggestive, the answers were clear, and we can find no prejudice. Mr. Ross testified on redirect examination that the winch would have been used to lift the heavy cable rather than the bucket and arms composing the cherry picker.

### 4. Leading questions and cumulative error

Mr. Pollard asked a number of leading questions. The Rodgerses and Crisco refer us to ten sustained objections for leading, five admonitions from the court *sua sponte*, one sanction where a witness was directed not to answer, and an in-chambers ruling that Mr. Pollard should refrain from leading. There were other objections to leading which were not ruled on or the question was withdrawn.

Cited for the proposition that incessant leading of witnesses and cumulative error require reversal is *Alexander* v. *Chapman*,

289 Ark. 238, 711 S.W.2d 765 (1986), where we reversed a defendant's judgment in a medical malpractice case because sanctions against leading were sought and, we held, should have been granted. We wrote:

> Here counsel repeatedly ignored the trial court's warnings concerning leading questions. The court conceded it could not or would not take action beyond admonishment. Only once did it instruct the witness not to respond. If counsel will not comply with the trial court's requests, then some sanction, with teeth, must be used against him. We are certain the leading would have stopped had the trial court granted appellants' motion to preclude further inquiry.

In the *Alexander* case, we noted that the trial court had essentially conceded a loss of control of counsel's improper leading questions. That was not the case here. The impropriety in this case simply did not rise to that level. In the *Alexander* case opinion we stated the sanctions available to a trial court to stop leading questions. Counsel for the Rodgerses and Crisco do not contend here that any of those sanctions were sought from the trial court in this case.

It is contended that we should reverse and remand for a new trial solely on the issue of damages because of the leading questions and because of the cumulative effect of all the errors alleged. In the conclusion of their brief the Rodgerses and Crisco ask in the alternative that a new trial be granted on all issues. The argument is that the cumulative effect of Mr. Pollard's improper trial tactics precluded a fair trial. In the *Alexander* case we noted that "[w]e do not, as a matter of course, reverse on the basis of such allegations even if they are borne out by the record." We found that case to be unique because of the apparent inability of the trial court to control counsel through sanctions.

As stated with respect to the individual points raised, we have found no error which would have required the trial court, in effect, to award a directed verdict to the Rodgerses and Crisco on the question of liability, and we thus decline to do it here. We also decline to grant a general new trial on the basis of the authority cited to us. We find no improper display of a "design" on the part of counsel to cause an unfair trial as apparently

occurred in the Florida case, *Ed Ricke & Sons* v. *Green, supra*, and we do not find the apparent and prejudicial loss of control by the trial court which caused an unfair trial and reversal in the *Alexander* case.

Affirmed.

PRICE, J., not participating.