Janet CALANDRO and Dale H. Suezaki *v.*
John W. PARKERSON

98-38                                           970 S.W.2d 796

Supreme Court of Arkansas
Opinion delivered June 18, 1998

*T.B. Patterson, Jr., P.A.*, for appellants.
*Cross, Gunter, Witherspoon & Galchus, P.C.*, for appellee.

DONALD L. CORBIN, Justice. Appellants Janet Calandro and Dale H. Suezaki appeal the judgment of the Garland County Circuit Court dismissing with prejudice their claim of deceit against Appellee John W. Parkerson and, also, granting summary judgment in favor of Appellee. This is the second appeal of this case, following our partial reversal and remand to the trial court. *See Calandro v. Parkerson*, 327 Ark. 131, 936 S.W.2d 755 (1997) (*Calandro I*). Hence, our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(7). Appellants raise two points for reversal. We find no error and affirm.

We set out the relevant facts of this case in considerable detail in *Calandro I*:

> On April 29, 1994, appellants filed their complaint against appellee, an attorney practicing in Hot Springs. They alleged that, in the spring of 1991, they had desired to open a convenience store, had located a site for the business, and had found a prospective landlord, Kwik Lane Management Company, which had agreed to rent the property and necessary equipment to them. Appellants obtained a proposed lease agreement from Jim Davis, a representative of the purported lessor, and took it to appellee.
>
> Upon appellee's recommendation, appellants incorporated as U and Me, Inc. Thereafter, appellee redrafted the lease agreement, which was executed on May 1, 1991, by Kwik Lane Management Corporation as lessor and U and Me, Inc., as lessee. The business had been in operation for approximately five months when, in September of 1991, appellants were advised that Kwik Lane was not the owner of the business premises; rather,

Southern Farm Bureau Life Insurance Company owned the real property and Worthen Bank owned the equipment. It was appellants' position that appellee's failure to inquire as to the status of the lessor and the title of the property leased constituted professional negligence, which proximately caused them to lose possession and use of the premises and equipment.

According to appellants' complaint, in October of 1991, appellee agreed to assist them in obtaining leases for the real property and the equipment and promised that he would "get back to them." On or about January 2, 1992, appellee, knowing that appellants would rely on his statement, told appellant Calandro that the real property had been sold, when, in fact, appellee knew that the property had not been sold. Relying on appellee's statement, appellants vacated the premises and allowed Worthen to take the equipment. Appellants claimed that, as a result of appellee's deceit as to the sale of the business premises, they voluntarily surrendered their rights in the equipment and fixtures necessary to operate their store, which closed in January of 1992. Two years later, on January 24, 1994, U and Me's corporate charter was revoked for nonpayment of franchise taxes. Appellants asserted that appellee's negligence and malfeasance constituted a breach of the attorney–client agreement, entitling them to a return of attorney's fees and costs.

327 Ark. 131, 133-34, 936 S.W.2d 755, 756-57. Appellants originally sued Appellee for legal malpractice, breach of contract, and deceit. The trial court granted summary judgment to Appellee on all three claims. We affirmed the trial court's ruling on the claims of legal malpractice and breach of contract in *Calandro I*, holding that those claims could only have been brought by the client-corporation, not the individual Appellants. Hence, because the corporation's charter had been revoked, we concluded that it had lost its capacity to sue. We reversed and remanded for further factual development of the claim of deceit, for which no privity of contract is required.

On remand, the trial court again ruled in favor of Appellee, this time dismissing Appellants' claim for their failure to comply with the court's order compelling discovery, pursuant to ARCP Rule 37. Additionally, the trial court granted summary judgment to Appellee due to Appellants' failure to meet proof with proof in support of their claim of deceit. This appeal followed.

On appeal, Appellants argue that the trial court erred and abused its discretion in dismissing their deceit claim based upon discovery violations. They contend that such a sanction was too harsh in proportion to the violations. They argue further that the trial court erred in granting summary judgment to Appellee, as they assert that there are material issues of fact still to be resolved.

*Facts*

The record reflects that on June 5, 1997, Appellee filed a motion to compel discovery. The motion reflected that Appellee had sent interrogatories to Appellants on April 8, 1997, and that no response had been made as of the date the motion to compel was filed. The motion reflected further that, approximately two weeks before the motion was filed, Appellee's attorney had contacted Appellants' attorney and had received assurances from Appellants' attorney that the answers would be forthcoming. On June 6, 1997, the trial court issued an order granting Appellee's motion to compel the discovery. The order directed Appellants to fully and completely respond to the interrogatories and the request for production on or before June 20, 1997.

Appellants filed their answers with the circuit court clerk on June 20, 1997. On June 23, 1997, Appellee filed a motion to dismiss pursuant to Rule 37, asserting that he had not yet received Appellants' answers, and that they were thus in violation of the trial court's order that the information be provided to him on or before June 20, 1997. On June 25, 1997, Appellee filed a supplemental motion to dismiss, asserting that, although he had received the answers on June 23, 1997, they were "largely evasive and incomplete." Appellee asserted further that the objections made by Appellants to four interrogatories were untimely and thus waived, as they were not raised within thirty days of service. On August 13, 1997, Appellee filed a motion for summary judgment, asserting, among other things, that from the evidence already taken, including various affidavits and depositions of the parties, there was no evidence of intentional deceit on his part.

On September 5, 1997, the trial court conducted a hearing on both motions, during which Appellants' attorney attempted to

submit an amended complaint and a response to Appellee's motion for summary judgment, which contained affidavits and a brief in support of the response. The trial court refused to consider the offered documents, ruling that Appellants had failed to comply with the provisions of ARCP Rule 56(c), which states that the adverse party has the right to serve opposing affidavits prior to the day of the hearing on the motion. The trial court heard considerable argument from both sides and, on September 8, 1997, issued a letter order granting both motions. The trial court entered an order of record on September 17, 1997. Regarding the motion to dismiss, the trial court found that Appellants were in violation of the court's order directing them to fully and completely answer Appellee's interrogatories, that their failure to comply with the court's order was willful, and that dismissal of the case was appropriate as a sanction for such violations, as provided in Rule 37(b). The trial court accordingly awarded Appellee attorney's fees in the amount of $300, also pursuant to Rule 37. Additionally, the trial court ruled that the motion for summary judgment was supported by affidavits and that Appellants had not filed a response to the motion prior to the hearing or offered any evidence rebutting those affidavits.

### Dismissal for Discovery Violations

For their first point for reversal, Appellants argue that the trial court abused its discretion by dismissing their claim of deceit for failure to comply with the court's order compelling discovery. They assert that there was no significant lack of compliance with discovery that would merit dismissal of their claim. We disagree.

Rule 37(a)(2) provides that if a party fails to answer an interrogatory submitted under ARCP Rule 33, "the discovering party may move for an order compelling an answer[.]" Subsection (a)(3) of Rule 37 provides that "an evasive or incomplete answer or response is to be treated as a failure to answer or respond." Subsection (b)(2)(C) of that rule provides that if a person fails to obey an order to provide or permit discovery, the trial court may, among other permissible sanctions, issue an order dismissing the action.

██ ██ The imposition of sanctions for the failure to provide discovery rests in the trial court's discretion, and this court has repeatedly upheld the trial court's exercise of such discretion in fashioning severe sanctions for flagrant discovery violations. *Viking Ins. Co. v. Jester*, 310 Ark. 317, 836 S.W.2d 371 (1992) (citing *Rodgers v. McRaven's Cherry Pickers, Inc.*, 302 Ark. 140, 788 S.W.2d 227 (1990) and *Goodwin v. Harrison*, 300 Ark. 474, 780 S.W.2d 518 (1989)). There is no requirement under Rule 37, or any of our rules of civil procedure, that the trial court make a finding of willful or deliberate disregard under the circumstances before sanctions may be imposed for the failure to comply with the discovery requirements. *Cook v. Wills*, 305 Ark. 442, 808 S.W.2d 758 (1991) (citing *Cagle v. Fennel*, 297 Ark. 353, 761 S.W.2d 926 (1988)). Here, however, the trial court specifically found that Appellants had willfully failed to comply with its order.

██ This court recently discussed the use of sanctions for discovery violations in *Rush v. Fieldcrest Cannon, Inc.*, 326 Ark. 849, 934 S.W.2d 512 (1996). There, the trial court found that the appellant's pattern of conduct in ignoring its orders was for the improper purpose of harassing the appellees and delaying the litigation. Deferring to the trial court's superior position to judge the appellant's actions, this court held that the trial court did not abuse its discretion in dismissing the appellant's case on the ground that she had failed to comply with the court's orders requiring her to narrow her list of expert witnesses. In support of the trial court's dismissal, this court cited sound considerations of public policy:

> While we recognize that dismissal is the most severe of sanctions, we are persuaded by the rationale of the District of Columbia Court of Appeals on this point:
>
>> [I]t is the plaintiff that is being sanctioned here. Appellant, as plaintiff, chose to utilize the court system to try to redress wrongs that had allegedly been done to her. When invoking such aid, a plaintiff should be prepared and willing to follow the rules that keep that system running in an orderly and efficient manner. *Noncompliance with court orders and rules may cause the system to bog down and may adversely affect other litigants. When a plaintiff is personally*

> *responsible for this type of delay, he or she prejudices not only the defendant but also the ability of other persons — persons that are doing what is necessary to follow the rules — to utilize the system.*

*Id.* at 855-56, 934 S.W.2d at 516 (quoting *Perry v. Sera*, 623 A.2d 1210, 1219 (D.C. App. 1993) (footnotes omitted) (emphasis added)). This court held further that it is crucial to our judicial system that trial courts retain the discretion to control their dockets. *Id.* (citing *Thompson v. Erwin*, 310 Ark. 533, 838 S.W.2d 353 (1992); *Eason v. Erwin*, 300 Ark. 384, 781 S.W.2d 1 (1989)).

Here, the record reflects that the interrogatories were first sent to Appellants on April 8, 1997, and that they went unanswered for well over thirty days. At some point prior to June 5, 1997, Appellee's attorney attempted to compel Appellants' answers by speaking with their attorney, who assured Appellee's attorney that such answers would be forthcoming. After two more weeks had passed, Appellee filed a motion to compel the discovery, and it was granted by the trial court the following day. The order reflected that Appellants "are directed to fully and completely respond to the Interrogatories and Request for Production on or before June 20, 1997." Appellants filed their answers on June 20, 1997, with the court clerk; however, the answers were not received by Appellee until June 23, 1997.

Furthermore, the answers submitted by Appellants were not full and complete as ordered by the trial court. Appellants objected to several interrogatories, namely numbers 1, 28, 34, and 40, and number 27 was not answered at all.[1] Interrogatory number 1 asked Appellants to list each meeting, conversation, or contact they had with Appellee after the incorporation of U and Me, Inc., specifying the date, length, purpose, and result of such meetings. Appellants objected to the question, alleging that it was "impossible to answer in its present form, because it calls for information not within the capability of [Appellants] to remember, and it is not of a type that was recorded in the course of business." Appellants did, however, offer an answer to the question, making reference to the contacts described in the complaint and their dep-

---

[1] During the hearing on the motions, Appellants' attorney claimed that the answer to interrogatory number 27 was omitted by accident.

ositions. They also indicated that if they should remember more contacts with Appellee, they would supplement the answer. No answers were ever supplemented.

Interrogatory number 28 asked Appellants to identify any documents that they had personally executed subsequent to the original lease that they claimed established a personal interest in the business premises and fixtures. Appellants objected on the basis that "[t]he form of this question is improper." Interrogatory number 34 asked Appellants to state how much they claimed in punitive damages. Appellants again objected, this time asserting that the question called for a legal conclusion. Lastly, interrogatory number 40 asked Appellants to identify any persons who had helped them prepare their answers to the interrogatories and how those persons had gained such information. Appellants objected that the information sought was protected by the attorney-client privilege.

Appellee asserts that the foregoing objections were untimely raised and, as such, Appellants failed to comply with the trial court's order. We agree. Rule 33(b) provides in relevant part:

> (3) The party upon whom the interrogatories have been served shall serve a copy of the answers, or objections *within 30 days after the service of the interrogatories* . . . . (4) All grounds for an objection to an interrogatory shall be stated with specificity. *Any ground not stated in a timely objection is waived* unless the party's failure to object is excused by the court for good cause shown. (5) The party submitting the interrogatories may move for an order under Rule 37(a) with respect to any objection to or other failure to answer an interrogatory. [Emphasis added.]

Similarly, any party claiming a privilege to refuse to answer interrogatories may obtain a protective order under ARCP Rule 26(c), which would protect the party from disclosure of certain matters. *Dunkin v. Citizens Bank of Jonesboro*, 291 Ark. 588, 727 S.W.2d 138 (1987). Rule 37(d) provides that the failure to serve answers to interrogatories may not be excused on the ground that the discovery sought is objectionable unless the party failing to provide the discovery has applied for such a protective order. *Id.*

■ Here, the objections made by Appellants to the interrogatories were untimely, given that they were not raised within thirty days after Appellants were served with the interrogatories. In fact, the objections were not made for some two and one-half months after service. Nor did Appellants apply for a protective order pursuant to Rule 26(c) on the ground that the discovery sought was objectionable. As such, their failure to serve full and complete answers to the interrogatories could not be excused under Rule 37(d).

In addition to those unanswered interrogatories, Appellee contends that a great number of the remaining answers are evasive and incomplete. By way of illustration only, we describe two of those answers. Interrogatory number 11 asked Appellants to:

> Describe how the fixtures on which Worthen Bank held a security interest were distinguished from the assets of U and Me, Inc. for purposes of the sale to Coulson Oil, describing the date and identity of those participating in the inventory.

Appellants answer reflected:

> We took our inventory and equipment and left behind what was not ours, after [Appellee] lied to us and persuaded us to move out.

Interrogatory number 25 asked Appellants to:

> Differentiate between any losses which you contend are attributable to U and Me, Inc. as opposed to those losses which you contend are personal which were caused by the alleged misrepresentation of [Appellee]. Provide a detailed explanation of your basis for the differentiation.

Appellants' answer is as follows:

> At the time we formed the corporation, it had nothing, and when we were done, it had nothing. We lost everything we put into it, including our money, our time, and our efforts. Ultimately, because it started at zero, the corporation just failed. We took all the losses.

We agree with Appellee that these answers are, at a minimum, incomplete, if not evasive. It is clear that these answers are nonresponsive, as both questions asked Appellants to distinguish between various assets and losses. Moreover, the information requested by interrogatory number 25, regarding the segregation of personal losses from those sustained by the corporation, was of crucial importance in light of our ruling in *Calandro I* that limited the case on remand to Appellants' claim for *individual* damages resulting from the alleged deceit.

■ Accordingly, we cannot say that the trial court abused its discretion in dismissing the case for Appellants' flagrant failure to comply with the court's directive to provide full and complete discovery to Appellee. The trial court was in a superior position to judge the actions or motives of the litigants, and we will not second-guess its ruling. The fact that the sanction imposed by the trial court was undoubtedly final and severe is of no consequence, as Rule 37 specifically provides for dismissal of the action where a party fails to comply with an order to provide discovery. Appellants were the plaintiffs in this case and, as such, they chose to utilize the court system to attempt to redress alleged wrongs. To allow them to bog down the judicial system through their delay and willful noncompliance with the trial court's order would be imprudent. We thus affirm the trial court's dismissal with prejudice of Appellants' deceit claim.

Because we affirm the trial court's decision to dismiss Appellants' claim of deceit, we need not address the second point pertaining to the trial court's grant of summary judgment.

Affirmed.