Jay B. BRESLAU and Kerri Steele Breslau, Personal
Representatives for the Estate of Kaitlyn Nicole Breslau,
Deceased, and as the Natural Guardians and Next Friends of Jake
Alexander Breslau and Jessica Danielle Breslau *v.* Mitchell S.
McALISTER, M.D., and Northwest Arkansas Clinic for Women

CA 00-445                                                35 S.W.3d 321

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered December 13, 2000

*Xollie Duncan,* for appellants.

*Friday, Eldredge & Clark,* by: *Phil Malcom* and *Clifford W. Plunkett,* for appellees.

JOHN F. STROUD, JR., Judge. This is a medical malpractice case. Appellants are the parents of the deceased child, Kaitlyn. They brought this action against appellees, Northwest Arkansas Clinic for Women and its employee, Dr. Mitchell McAlister, alleging that after Kaitlyn's twin, Jessica, was born Dr. McAlister failed to properly monitor Kaitlyn's status, failed to detect Kaitlyn's distress, failed to act on the distress shown, and failed to deliver Kaitlyn by Caesarean section. Kaitlyn was born with severe brain damage, and she died when she was ten months old. The jury returned a verdict for the appellees. We affirm.

█ For their first point of appeal, appellants contend that the trial court erred in allowing defense counsel to display for the jury quotations from medical treatises and periodicals in an enlarged form. At trial, appellants objected repeatedly to the use of blow-ups and their publication to the jury, including at times an objection to portions of the enlargements being highlighted in yellow. No particular rule of evidence was relied upon in making the objection, and it was not couched in terms of violating the hearsay rule. On appeal, however, appellants rely upon Rule 803(18) of the Arkansas Rules of Evidence as support for their position. Parties are bound

on appeal by the scope and nature of their objections as presented at trial. *Hinkston v. State,* 340 Ark. 530, 10 S.W.3d 906 (2000).

Even if we were to address this issue on its merits, however, we would find that appellants' reliance upon Rule 803(18) is misplaced. Rule 803 lists several exceptions to the hearsay rule. Subsection (18) provides:

> (18) *Learned Treatises.* To the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by testimony or admission of the witness or by other expert testimony or by judicial notice. *If admitted, the statements may be read into evidence but may not be received as exhibits.*

(Emphasis added.) The gist of appellants' argument is that the enlarged format of the excerpted portions of the medical treatises and periodicals somehow converted them into "exhibits," even though they were not admitted into evidence nor allowed to go to the jury room with the jury. We disagree. The advisory committee note to Federal Rule of Evidence 803(18), the federal counterpart to Arkansas Rule of Evidence 803(18), explains in pertinent part the purpose of the last sentence of the subsection:

> The rule avoids the danger of misunderstanding and misapplication by limiting the use of treatises as substantive evidence to situations in which an expert is on the stand and available to explain and assist in the application of the treatise if declared. The limitation upon receiving the publication itself physically in evidence, contained in the last sentence, is designed to further this policy.

■ ■ The items challenged by the appellants clearly fall within the category of demonstrative evidence. The admissibility and use of demonstrative evidence is a matter falling within the wide discretion of the trial court. *Edwards v. Stills,* 335 Ark. 470, 984 S.W.2d 366 (1998). We find no abuse of the trial court's discretion in allowing defense counsel to use the medical treatises and periodicals in this fashion.

For their second point of appeal, appellants contend that the trial court abused its discretion when it first ruled that Dr. Robert Arrington's opinion testimony would be excluded and then

changed its decision and ruled that his deposition could be admitted in its entirety. We disagree.

Appellants' one-page argument follows in pertinent part:

> The trial court had ruled on October 1, 1999, prior to the start of the trial on October 4, 1999, that expert opinion testimony of Dr. Arrington would not be permitted because Dr. Arrington had not been named as an expert by the deadline set by the Court. . . . The trial court has wide discretion in imposing sanctions for failure to provide discovery. *See Calandro v. Parkerson,* 333 Ark. 603, 970 S.W.2d 796 (1998) and *Arkansas Rule of Civil Procedure* 37. In this case the trial court imposed deadlines for the naming of expert witnesses. In the hearing on October 1, the trial Court found that because Dr. Arrington had not been named as a witness, neither party would be allowed to use any expert testimony from him but would be allowed to use only that testimony arising as a result of his involvement with Kaitlyn Breslau as a treating physician. It is appellees' contention that this ruling was well within the Court's discretion as described in the above-styled case. The trial court requested and received from both sides, their positions on which portions of Dr. Arrington's deposition should not be received into evidence because of a violation of the court's ruling on expert opinion testimony.

. . . .

Because the Court was aware that appellant intended to use Dr. Arrington's deposition on Tuesday, October 5, the reversal of his original ruling was prejudicial and most especially was prejudicial at that point in time.

Dr. Arrington was the neonatologist who treated Kaitlyn when she was transferred to Arkansas Children's Hospital. Appellants took his evidentiary deposition prior to trial. During the cross-examination by appellees, Dr. Arrington explained that it was his judgment that the injury Kaitlyn suffered "was consistent with something that happened more remote from delivery than the last two hours of labor prior to delivery." He further explained what he meant by questionable intrauterine insult, a term that appeared in the "impression" portion of the medical records:

> We put questionable intrauterine insult because we weren't sure what, what had happened. Intrauterine refers to it happened sometime in utero. . . . That's a general term, intrauterine, meaning that

we didn't know for sure what happened, but it happened sometime before birth.

Following the deposition, appellants moved *in limine* to strike Dr. Arrington's cross-examination testimony as to the causation and timing of the injury, *i.e.,* that the child's brain damage occurred prior to the mother's labor. They based their motion to strike on the fact that Dr. Arrington was not listed as an expert witness by appellees during discovery, arguing that the failure to do so amounted to a discovery violation. Appellees responded in part that they were not required to disclose him as a witness because they had never expected or intended to call him as a witness prior to his deposition being taken by appellants.

The trial court heard the motion on October 1, 1999, prior to the start of trial on October 4, 1999. The court ruled that any opinions offered by Dr. Arrington, for either party, should be excluded. However, by the first day of trial, October 4, the trial court had read the deposition and had determined:

> It is the Court's opinion that the defense has not turned plaintiffs' fact witness into their expert witness. Defense has the right under the Rules of Evidence and Procedure to wide latitude on cross examination. Defense has the right to cross-examine the witness on the diagnosis. Dr. Arrington states on direct examination that it is before a certain time and then goes into more precise timing. Contrary to what I indicated last Friday based on statements made to me by counsel, it was my intention to strike all kinds of opinion testimony on either side. I find in reality this is fact testimony of what he determined as his diagnosis back at the time he treated the child at Arkansas Children's Hospital.

■ It is also important to note that Dr. Arrington was held in abeyance in case he was needed to testify live at the trial. Thus, appellants had the opportunity to try to avoid the problems about which they complain on appeal by calling Dr. Arrington as a live witness and reformulating their direct examination of him in an attempt to avoid opening the door for the type of cross-examination that occurred during the deposition. Appellants did not call Dr. Arrington, but rather introduced his deposition testimony into evidence. Moreover, the timing of the trial court's change of position may have been inconvenient for appellants, but the problem could have been addressed by asking for a continuance, which they did

not do. Finally, trial courts are afforded considerable discretion in ruling on such matters, regardless of whether it is viewed as a ruling involving discovery deadlines (*See generally Calandro v. Parkerson*, 333 Ark. 603, 970 S.W.2d 796 (1998)), introduction of evidence (*Arthur v. Zearley*, 337 Ark. 125, 992 S.W.2d 67 (1999)), or proper cross-examination (*Clark v. State*, 246 Ark. 1151, 442 S.W.2d 225 (1969)), and we will not reverse in the absence of a showing of abuse of that discretion. Appellants have not convinced us that the trial court abused its discretion in allowing this deposition testimony.

For their final point of appeal, appellants contend that the "trial court erred in allowing Dr. Bruce Berg to testify outside his area of expertise and to offer expert opinions that were not to a reasonable degree of medical certainty on the issue of whether dead tissue, debris, or blood clots from the placenta *in utero* can travel by fetal circulation to the brain and on the issue whether appellees did or failed to do something in labor and delivery that caused injury to Kaitlyn Breslau." We find no reversible error.

Dr. Berg testified that he is a professor of child neurology and pediatrics; that he is board certified by the American Board of Pediatrics, board certified by the American Board of Psychiatry and Neurology in adult neurology, and board certified by the American Board of Psychiatry and Neurology in neurology with special competence in child neurology; that he authored the book, *Principles of Child Neurology*; and that he is involved in the practice of neonatal neurology at the University of California at San Francisco. He stated that he has training, experience, and education regarding the cause and timing of an injury to a child's brain. He expressed his "opinion within a reasonable degree of medical certainty that the injury to Kaitlyn Breslau's brain occurred before labor had begun," and that it had "nothing to do with the perinatal period, which involves labor and delivery time."

With respect to the issue raised by appellant, the following colloquy occurred at trial:

DEFENSE COUNSEL: Can you tell the ladies and gentlemen of the jury can something occur *in utero* with fetal circulation that can transmit a clot, debris, lesion to a brain?

| | |
|---|---|
| PLAINTIFF'S COUNSEL: | Objection on the basis that this opinion is not within Dr. Berg's area of expertise. |
| DEFENSE COUNSEL: | I think he can talk about neurologically what can occur. |
| THE COURT: | You need to ask him if he feels qualified in that area to give an opinion on it. |
| DR. BERG: | It is hard to know what you mean by qualified to comment on how something *in utero* can be transmitted through fetal circulation to a child's brain. I've seen it. Every doctor knows about the anatomy of an infant umbilical cord, so in that regard, yes, I've seen it. Most injuries that would produce asphyxia to a child's brain occur more commonly before delivery. |
| DEFENSE COUNSEL: | Dr. Berg, do you have an opinion within a reasonable degree of medical certainty or within a reasonable degree of medical probability whether there is anything that my client, Dr. Mitch McAlister, did or allegedly failed to do in the management of Mrs. Breslau's labor and delivery that in your opinion caused injury to Kaitlyn Breslau? |
| PLAINTIFF'S COUNSEL: | Objection to the lack of foundation that Dr. Berg is qualified to give an opinion in the particular area of labor and delivery. |
| DEFENSE COUNSEL: | Dr. Berg, do you have an opinion as to whether there was anything done or failed to be done during the time period of labor and delivery that produced and caused the injury to Kaitlyn Breslau's brain? |
| PLAINTIFF'S COUNSEL: | Same objection, your honor. |
| DEFENSE COUNSEL: | I'm talking about timing, your Honor. |
| THE COURT: | I'm going to overrule your objection. He has already told us about his qualifications and experience about the issue of timing, so I am going to overrule it. Go ahead. |
| DR. BERG: | I did not see anything that should have been done that was not done. |

■ Cross-examination of this witness followed, during which Dr. Berg made it clear that he was not holding himself out to be an obstetrician or gynecologist. Appellant did not move to strike the doctor's testimony following cross-examination. Where a party objects to a witness's testimony for lack of foundation and lack of qualification, but does not move to strike following a cross-examination which develops these issues, any error is waived. *See New Prospect Drilling Co. v. First Commercial Trust,* 332 Ark. 466, 966 S.W.2d 233 (1998).

■ Moreover, even if we were to address this issue on the merits, the result would be the same. Rule 702 of the Arkansas Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Whether to allow a witness to give expert testimony rests largely within the sound discretion of the trial court, and that determination will not be reversed absent an abuse of that discretion. *Swadley v. Krugler,* 67 Ark. App. 297, 999 S.W.2d 209 (1999).

■ Here, Dr. Berg testified that all medical doctors have expertise concerning the anatomy and function of an umbilical cord, and that the anatomy of an umbilical cord allows debris, dead tissue, and blood clots to be transmitted from the placenta to the infant. Furthermore, he testified that with respect to how something *in utero* can be transmitted through fetal circulation to a child's brain, he actually "had seen it." Finally, with respect to Dr. Berg's testimony that he "did not see anything that should have been done that was not done" during the labor and delivery process to cause Kaitlyn's brain injury, the trial court determined that he was qualified to express this opinion based upon his medical opinion as a neurologist that the brain damage occurred prior to labor and delivery. Appellants' arguments simply have not convinced us that the trial court abused its considerable discretion in allowing Dr. Berg's testimony.

Affirmed.

BIRD, KOONCE, CRABTREE, and ROAF, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. Rule 803(18) of the Arkansas Rules of Evidence states:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(18) *Learned Treatises.* To the extent called to the attention of an expert witness upon cross-examination or relied upon him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by testimony or admission of the witness or by other expert testimony or by judicial notice. *If admitted, the statements may be read into evidence but may not be received as exhibits.* (Emphasis added.)

I would hold that the trial court abused its discretion when it overruled appellants', objection to the appellees use of enlargements of medical treatises and periodicals during direct and cross-examination of expert witnesses. Instead of counsel for appellees merely reading the statements from the treatises into the record when he questioned witnesses, he made enlargements of the statements and displayed them during the examination and cross-examination. Although it is true that the enlargements were not received as exhibits in a formal sense, I see no practical difference between receiving the enlargements as exhibits and what the trial court allowed.

Appellees' argument that the use of an enlarged and emphasized statement from a learned treatise does not differ from use of enlarged deposition testimony during cross-examination is unpersuasive. The rules of evidence allow all prior inconsistent statements to be introduced as substantive evidence, in addition to their use for impeachment. But that applies to prior statements by the witness, not by a third-party non-witness who is neither present nor subject to cross examination. In this case, none of the excerpts involved prior inconsistent statements by the witnesses being questioned when the enlargements were displayed to the jury.

The essence of Rule 803(18) is that statements contained in published treatises, periodicals, or pamphlets which have been established as reliably authoritative may be read into evidence to the extent that those statements are called to the attention of a witness during cross-examination or relied upon by the witness in direct examination. Those statements are not, however, independently

admissible as evidence. But for Rule 803(18), those statements would be deemed hearsay. Rule 803(18) avoids the hearsay problem by allowing them to be read into evidence during questioning but not received for display and publication to the jury. When they are read into evidence as provided by the Rule, the contents of learned treatises merely allow the jury to assess the credibility of a witness whose opinion is either inconsistent with or contradicted by a treatise the witness has acknowledged as authoritative on the subject about which the witness has testified.

But when the statements are published to the jury, the focus turns from the testimony of the witness and shifts to the treatise. In the present case, the jury did not need to see the words that were enlarged and prominently displayed on placards in order to know whether witnesses were presenting consistent or contradictory testimony. The transparent reason for enlarging the excerpts from the treatises was to get the contents of the treatises before the jury as substantive evidence. The fact that the enlargements were not marked with exhibit stickers and formally admitted as evidence does not lessen the impact of publishing and prominently displaying the statements to the jury. The trial court's cautionary statement was inadequate to "unring" the bell after the jury read the statements.

Proof which is addressed directly to the senses of the trier of fact without interposing the testimony of witnesses is generally characterized as visual, real, or demonstrative evidence. 29A AM. JUR. 2d *Evidence* § 934 (1994). The enlargements did not demonstrate anything. They were not presented so that the jury could view a scene. They did not diagram, sketch, or otherwise depict a setting. The enlargements were not medicine or science. They were simply placards upon which magnified words from the treatises and periodicals were displayed. It is inaccurate to characterize the placards the same way that we treat photographs, X-ray pictures, maps, models, motion pictures, and videotapes.

Courts should confine counsel to the terms of the rule by allowing them to read the affected statements into evidence during questioning to demonstrate that witness testimony is either in accord with or contradicts statements found in sources recognized as reliably authoritative. When counsel are allowed to publish statements from learned treatises to the jury in any other fashion, those

statements essentially become proof in themselves. When that happens, what our rules intended to not be hearsay becomes, for all effective purposes, implicitly admitted hearsay.

I respectfully dissent.