COULSON OIL CO., Inc., and Coulson Properties, LLC *v.*
Christopher TULLY and Michelle Tully

CA 03-555                                       139 S.W.3d 158

Court of Appeals of Arkansas
Division II
Opinion delivered December 17, 2003

*Barber, McCaskill, Jones & Hale, P.A.*, by: *R. Kenny McCulloch* and *Perry L. Wilson*, for appellants.

*Lovell & Nalley*, by: *John Doyle Nalley*, for appellees.

JOHN MAUZY PITTMAN, Judge. Coulson Oil.Co., Inc., and Coulson Properties, LLC ("Coulson"), have taken an interlocutory appeal from the Saline County Circuit Court's imposition of sanctions, including the striking of their answer, for lying in their responses to discovery propounded by appellees Christopher Tully and Michelle Tully. On appeal, the primary issue is whether, under the facts presented, the trial court abused its discretion in imposing these sanctions. We hold that the trial court did not abuse its discretion, and we affirm.

*Procedural History*

In August 2001, Mr. Tully was injured in an accident at a Sherwood convenience store leased by Coulson to Robert Baynes when his pickup truck dropped into a hole in the pavement caused by a broken metal cover for an underground gasoline tank. He and his wife filed this negligence action in April 2002, alleging that Coulson was negligent in maintaining its property. The Tullys propounded interrogatories to Coulson requesting information about maintenance and repairs of the tank cover that had caused the accident. In their responses filed August 20, 2002, and September 4, 2002, Coulson denied having any responsibility for the maintenance or repairs of the tank covers and stated that they were the responsibility of Robert Baynes. The August 20, 2002, responses stated in part:

> INTERROGATORY NO. 6: Attached as Exhibit "A" is a photograph showing the metal cover, which caused Plaintiff's damages and injuries, in regards, please state:
>
> a. The date the cover was broken, and how it was broken;
>
> b. The name, address and telephone number of all persons with knowledge concerning how the cover was broken and/or repaired;
>
> c. The name, address, phone number of the person or persons who discovered that the metal cover described in the Complaint was missing or broken;
>
> d. The date and time the metal cover was replaced or repaired, and the name, address and home number of the person or persons making such repair; and
>
> e. If there was an incident or accident report made.
>
> RESPONSE: Coulson Oil Co. was not aware the metal cover was broken until this lawsuit was filed.

The September 4, 2002, responses included the following statements:

> INTERROGATORY NO. 2: Please state the name, address and telephone number of the person(s) and/or entity which was

responsible for maintaining the fuel tank covers at the location where this accident took place as of the date of the accident.

RESPONSE: Robert Baynes.

REQUEST FOR PRODUCTION NO. 1: Please produce and attach all documentation concerning maintenance and/or repair of the fuel tanks and fuel tank covers where this accident took place from two (2) years preceding the date of the accident to-date.

RESPONSE: Defendant does not have this information.

INTERROGATORY NO. 3: Please state the name, address and telephone number of the person(s) responsible for inspecting the fuel tank covers where this accident took place as of the date of this accident.

RESPONSE: Robert Baynes and/or his employees.

INTERROGATORY NO. 4: Please state whether any repairs were made to the fuel tanks, fuel tank covers and/or surrounding areas after the day of Plaintiff's accident.

RESPONSE: Defendant was not responsible for upkeep of the fuel tanks, fuel tank covers, or surrounding areas, therefore, this information is unknown to Defendant.

INTERROGATORY NO. 5: If your answer to the preceding Interrogatory was affirmative, please state the name, address and telephone number of each person(s) and/or entity which made any such repairs.

RESPONSE: See response to Interrogatory No. 4.

REQUEST FOR PRODUCTION NO. 2: Please produce and attach all documentation evidencing the repairs referenced in Interrogatory Number 5 & 6 above.

RESPONSE: Defendant is not in possession of this information, please see response to Interrogatory No. 4.

INTERROGATORY NO. 6: Does the Defendant contend that any person(s) or entity was responsible for maintaining the fuel

tanks and/or fuel tank covers on the date of the accident, other than Defendant and its employees? If so, please provide the name, address, telephone number, and place of employment of any such person or entity.

RESPONSE: Yes, Robert Baynes.

The Tullys filed an amended complaint in September 2002 naming Mr. Baynes as a defendant. During a deposition taken of Mr. Baynes on January 15, 2003, the Tullys learned that Coulson had made repairs to the tank cover involved in this accident. The Tullys' attorney immediately sent a letter to Coulson's attorney requesting information about Coulson's repairs to the property. A few days later, Coulson's attorney sent a letter supplementing its earlier responses to discovery by listing additional witnesses with knowledge of Coulson's repairs to the tank cover and copies of repair bills paid by Coulson. He stated:

I am writing to your recent inquiry as to the identity to [sic] certain individuals who may have knowledge of repairs made to the parking lot area after the August 8, 2001 accident. Please consider this letter as supplementation to Interrogatory Nos. 6 and 8 of the Interrogatories propounded to Coulson Oil Company, Inc.

INTERROGATORY NO. 6(b) — should be supplemented to show that there are individuals that have information concerning the repair of the "manway" area. To Defendant's knowledge, the cover was not broken but a repair was made to the area. The individuals with the information concerning the repair include Mark Simpson, Larry McArthur, Francis Bright, and Dick Kohler of Coulson Oil Company and Cruzen Equipment Company, Inc., 9100 Interstate 30, Little Rock, Arkansas, (501) 374-1515.

INTERROGATORY NO. 6(d) — should be amended to reflect that Cruzen Equipment Company, Inc. performed the above stated repair some time after October 5, 2001.

INTERROGATORY NO. 8 — should be supplemented to show that Mark Simpson, Larry McArthur, Francis Bright, Dick Kohler, representatives of Cruzen Equipment Company, Inc., John K. Jones of John K. Jones & Associates Tax Service, 154222 Interstate 30, Benton, Arkansas, may be called to testify at the trial of this matter. These individuals will testify concerning the condition of the

manway/ monitoring well prior to Plaintiff's accident and repairs made to the manway/ monitoring well following the accident. Cruzen Equipment Company, Inc. employees may testify as to the repairs made to the manway/monitoring well which were discovered following the Plaintiff's accident.

. . . .

INTERROGATORY NO. 10 — Defendant may introduce various photographs taken of the subject area at various times. In addition, Defendant may introduce copies of work orders from Pollution Management, Inc. referencing installation of a verter route tank monitoring system in May of 2001. (See attached work orders and invoice from Pollution Management, Inc.) Also see attached invoices from Cruzen Equipment Company, Inc. concerning repair work on the manway/monitoring well. In addition, Defendant reserves the right to introduce copies of Plaintiff's income tax returns filed prior to and following the accident, as well as copies of Plaintiff's medical records.

The Tullys filed a motion for sanctions against Coulson for having lied in their responses to discovery. In response, Coulson denied that it had lied and asserted that it had made diligent inquiry of the matters requested in discovery. At a hearing on the motion, the trial court found that Coulson had lied:

THE COURT:   Well, the problem I have with that position ... is you put the parties submitting interrogatories in a position of having to assume that the responses are probably not truthful, and, therefore, you need to go find people who will reveal that they're not truthful and take their deposition or ask them questions so that you can force the person to tell the truth, and while I understand what you're saying, and I agree, I'm sure Mr. Nalley's accurate, it's no wrongdoing on your part, I think it's a flagrant disregard for our whole system to allow a litigant to attempt to get away with that. If he hadn't taken that deposition, they would have. They would have absolutely gotten away with telling a lie. As far as I'm concerned, they lied to the Court. They just flat out lied. There's an unequivocal answer in there that says, it's not our responsibility, absolutely unequivocal. There's nothing to supplement that with. There's nothing incomplete about that. That is a flat out, no, it's not our responsibility, and now you tell me, whoops you caught us, it's okay, we can fix it, it is our responsibility, no, that is absolutely

wrong, fundamentally wrong to our whole system. If I can find a way, I will definitely sanction Coulson Oil for flat out lying in this lawsuit, just absolutely flagrantly telling a lie and trying to get away with it. Apparently, they have up to a point but if there's a sanction available, they are going to be subject to it, I can assure you.

. . . .

Two questions in particular really bother me beforehand and still do, "Please produce and attach all documentation concerning maintenance and/or repair to the fuel tanks and fuel tank covers where this accident took place from two years preceding this date to the date of the accident." Response: "Defendant does not have this information." The next one — I skipped one, Number four, "Please state whether any repairs were made to fuel tanks, fuel tank covers and/or surrounding areas after the day of the Plaintiff accident." "Defendant was not responsible for the upkeep of the fuel tanks, fuel tank covers or surrounding areas, therefore, this information is unknown to the Defendant." How can you say that the Rules provide them an opportunity to supplement that by saying, that's not true, we are responsible. And although they don't say it, the only reason we're telling you, is because you found out. That's the only reason we're telling you. It didn't come to light accidentally and us say, oh, we forgot, we've discovered this on our own. That would be a different case if the party answering the interrogatory on their own concluded we've misled, we've made an error and come forth on their own without any incentive on the part of the other side, that would be different and I would agree with you. They should be cut some slack. That's not the case here at all. I mean, they came forward with the truth when they got caught and that's the only time they did anything. Sure it's a month before trial. That had nothing to do with it whether it was a week before or a year before. They weren't going to do anything apparently unless they got caught.

The trial court asked the parties to brief the question of whether it could sanction Coulson under Ark. R. Civ. P. 37. In its brief, Coulson argued that it could not be sanctioned because it had not violated a court order, had not acted out of willfulness or bad faith, and had not failed to respond to the Tullys' requests for discovery. It also asserted that it had properly supplemented its

responses under Ark. R. Civ. P. 26(e). Along with its brief, it filed the affidavit of Mary Ann Dawkins, Coulson's corporate secretary. She stated:

> 3. I was responsible for compiling the information requested by counsel for the Plaintiff in his Interrogatories and Requests for Production.

> 4. In compiling the information requested by counsel for the Plaintiff, I quickly gathered the information that I could find, and I was not entirely thorough in my research.

> 5. When I provided the information stating that Coulson Oil Company, Inc. was not responsible for upkeep of the fuel tanks, fuel tank covers, or surrounding areas in question, my statements were based upon the information obtained in my less than thorough research.

> 6. Upon further request by our attorneys, I performed a more thorough search of the records, and I discovered repair records related to the Sherwood store location concerning the monitoring well at that location; I first learned of this information on January 16, 2003. Upon finding this documentation, I immediately forwarded it to out [sic] attorneys by facsimile on January 16, 2003.

> 7. At no time was my intention to lie or to hide any information from the Plaintiff, Plaintiff's counsel, or the Court.

The court issued a letter opinion, stating:

> The defendant, Coulson Oil Company, Inc., failed to comply with the intent or spirit of discovery. In fact, it is clear to me in this case the defendant wilfully made false representations, not simply omissions or misleading statements, but absolute untruths on at least two separate occasions during the discovery process. It is equally clear to me that the defendant's conduct warrants severe sanctions. As such, Coulson's Answer shall be stricken, and the case should proceed to trial against Coulson on damages only.

On February 27, 2003, the court entered an order striking Coulson's answer and directing that only the issue of damages would be tried. It also ordered Coulson to reimburse the Tullys for the costs of taking Mr. Baynes' deposition. This interlocutory

order was immediately appealable under Ark. R. App. P. 2(a)(4), which provides that an appeal may be taken of an order that strikes out an answer, any part of an answer, or any pleading in an action. *See Allen v. Greenland*, 347 Ark. 465, 65 S.W.3d 424 (2002).

In the present case, the trial court struck Coulson's answer and awarded the Tullys their costs of deposing Mr. Baynes as a result of Coulson's failure to provide truthful discovery. Coulson argues that the trial court erred in imposing the sanctions that it did because (1) it violated no court order compelling discovery and (2) it answered the Tullys' requests for discovery. Coulson points out that it provided "supplemental" discovery "immediately upon its realization that incomplete and incorrect information had been furnished" to the Tullys. Coulson argues that the trial court went "beyond the parameters" of Ark. R. Civ. P. 37 in imposing sanctions because Coulson's "omission" of information in re-sponse to the Tully's requests for discovery was simply "a result of the less than thorough research" that it had performed in answer-ing those requests. According to Coulson, this means that "a party can be severely sanctioned for supplementing a previously incor-rect response to discovery."

Coulson completely mischaracterizes what actually hap-pened. It is true that Coulson did not fail to respond to requests for discovery — it unequivocally responded, denying any responsibil-ity for the maintenance and repair of the tank covers. However, the trial court made express findings of fact that Coulson had lied and that it had supplied the correct information only because its lies had been discovered. Coulson did not act, on its own initia-tive, to supplement incorrect information that it had provided in good faith; according to the trial court, it got caught lying and then produced accurate information.

■■ Rule 37 and the cases following it support the sanctions imposed in this case. The imposition of sanctions for failure to provide discovery rests in the trial court's discretion; the supreme court has repeatedly upheld the trial court's exercise of such discretion in fashioning severe sanctions for flagrant discovery violations. *Calandro v. Parkerson*, 333 Ark. 603, 970 S.W.2d 796 (1998). "There is no requirement under Rule 37, or any of our rules of civil procedure, that the trial court make a finding of willful or deliberate disregard under the circumstances before sanctions may be imposed for the failure to comply with the discovery requirements." *Id.* at 608, 970 S.W.2d at 799; *accord*

*National Front Page, LLC v. State*, 350 Ark. 286, 86 S.W.3d 848 (2002); *Viking Ins. Co. v. Jester*, 310 Ark. 317, 836 S.W.2d 371 (1992); *see also Rodgers v. McRaven's Cherry Pickers, Inc.*, 302 Ark. 140, 788 S.W.2d 227 (1990).

■ The severe sanctions that may be imposed include the striking of a claim or a defense. In David Newbern and John Watkins, *Arkansas Civil Practice & Procedure*, § 17-13, at 263 (3d ed. 2002), the authors state:

> Obviously, some of the available sanctions for failure to comply with a discovery order may be devastating to a claim or defense. Dismissal and judgment by default fall into that category, as do orders refusing to permit a position to be advanced or supported and prohibiting the introduction of designated evidence. The Supreme Court has described sanctions of this type as "extraordinary" and said that they should be used "sparingly and only when other measures fail because of the inherent danger of prejudice." However, the Court has "repeatedly upheld" the discretion of trial judges "in fashioning severe sanctions for flagrant discovery violations."

■ In *Cagle v. Fennel*, 297 Ark. 353, 761 S.W.2d 926 (1988), the court found that the trial court had acted well within its discretion in entering its final order dismissing the appellant's suit with prejudice in light of her failure to attend two depositions and her subsequent failure to pay the costs and fees assessed by the judge in lieu of and to avoid the dismissal of her case. The court held that the rules of civil procedure do not require a finding of willful or deliberate disregard before sanctions may be imposed for failure to comply with the discovery rules.

■■ In *Dunkin v. Citizens Bank of Jonesboro*, 291 Ark. 588, 727 S.W.2d 138 (1987), the supreme court affirmed the striking of a party's partial answer because she had not answered all of the interrogatories propounded to her, even though she had been ordered to do so. The court stated:

> Authority for the trial court's action can be found in our rules of civil procedure. Arkansas R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the issues in the pending actions, ..." Ark. R. Civ. P. 37(d) states that if a party fails to serve answers or objections to interrogatories "the court in which the action is pending on motion

may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B) and (C) of subdivision (b)(2) of this rule." Rule 37(b)(2)(C) then permits the court to enter an order "striking out pleadings or parts thereof."

291 Ark. at 590, 727 S.W.2d at 139-40.

■ The supreme court's final comments in *Calandro v. Parkerson*, 333 Ark. at 612, 970 S.W.2d at 801, bear repetition here:

> Accordingly, we cannot say that the trial court abused its discretion in dismissing the case for Appellants' flagrant failure to comply with the court's directive to provide full and complete discovery to Appellee. The trial court was in a superior position to judge the actions or motives of the litigants, and we will not second-guess its ruling. The fact that the sanction imposed by the trial court was undoubtedly final and severe is of no consequence, as Rule 37 specifically provides for dismissal of the action where a party fails to comply with an order to provide discovery. Appellants were the plaintiffs in this case and, as such, they chose to utilize the court system to attempt to redress alleged wrongs. To allow them to bog down the judicial system through their delay and willful noncompliance with the trial court's order would be imprudent. We thus affirm the trial court's dismissal with prejudice of Appellants' deceit claim.

■ Arkansas Rule of Civil Procedure 37 provides two methods of imposing sanctions. Under Rule 37(b), sanctions may be imposed for failure to comply with an order compelling discovery. Rule 37(d) also provides that sanctions may be imposed for failure to respond to interrogatories or other discovery requests. Sanctions issued under Rule 37(d) do not require an order compelling production as a prerequisite. Because no previous discovery order was entered, Rule 37(d) is applicable to this case. Rule 37(d) states in relevant part:

> If a party, or an officer, director or managing agent of a party or person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party, fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written

response to request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B) and (C) of subdivision (b)(2) of this rule....

The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided in Rule 26(c).

Thus, Rule 37(d) allows the court to impose the sanctions that are allowed in subsections (A), (B), and (C) of Rule 37(b)(2), which permit the court to enter such orders as the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....

The supreme court has upheld the imposition of Rule 37(d) sanctions in the absence of a prior order to compel production where a defendant has failed to answer interrogatories or otherwise failed to comply with discovery. In *Cook v. Wills*, 305 Ark. 442, 808 S.W.2d 758 (1991), Ms. Cook repeatedly agreed to the production of her 1988 income tax return. However, on the day of trial, and after the jury had been impaneled, defense counsel advised the trial court that Ms. Cook had not produced her 1988 tax return as she had promised on prior occasions. In light of her conduct, the trial court imposed sanctions under Rule 37(d) and struck her third-party complaint even though no prior order to compel had been issued. Noting that, pursuant to Rule 37(d), the court "may make such orders in regard to the failure as are just," the supreme court held on appeal that the trial court did not abuse

its discretion in imposing severe sanctions under that rule. The court also rejected Ms. Cook's argument that Rule 37 requires a showing of willful disregard of the discovery rules before sanctions can be imposed.

Also, in *Harper v. Wheatley Implement Co.*, 278 Ark. 27, 643 S.W.2d 537 (1982), the appellants did not complete answers to interrogatories or to questions on deposition, and the appellees filed a motion to compel. Although the trial court did not issue an order compelling discovery, it struck the appellants' pleadings relating to certain claims on the day of trial. The supreme court held that, under Rule 37(d), the trial court had the authority to take that action.

The supreme court relied upon its decisions in *Cook v. Wills* and *Harper v. Wheatley Implement Co.* in *National Front Page, LLC v. State, supra*, where it affirmed the trial court's imposition of 37(d) sanctions, including striking the appellants' answer and entering a default judgment, based on their failure to timely respond to discovery requests, to appear at a hearing on a motion to compel, and to appear at trial. The supreme court held that the circuit court had the authority to issue sanctions, including default judgment, under Rule 37(d), and that it could do so without an order to compel discovery having been entered.

Given the court's authority to impose such sanctions under Rule 37(d) in the absence of an order to compel discovery, the next question is whether, under the facts presented, the circuit court abused its discretion in doing so. Coulson argues that the Tullys were not prejudiced by its incorrect responses to discovery because it provided correct information one month before trial. It asserts that its "supplementation," as provided by Ark. R. Civ. P. 26(e), cured any problems its false responses to discovery might have caused. We disagree. Rule 26(e) provides for the supplementation of "incomplete or incorrect" responses — it does not provide that untruthful responses are sufficient so long as they are corrected if and when the responding party's deceit is discovered. Further, the trial court did not base its decision on whether the Tullys were prejudiced — it based it on the seriousness of Coulson's behavior and the consequences that should result from that behavior. Deliberately untrue responses to discovery are, in our view, worse than an outright refusal to answer. If a party

refuses to provide discovery, the other party is, at least, aware of the problem. Dishonest responses, however, prevent the party seeking discovery from learning the true situation. Additionally, one cannot say that the Tullys were not prejudiced by Coulson's lack of veracity, because it is obvious that the Tullys would have been better able to prepare for Mr. Baynes's deposition if Coulson had been truthful in its responses. Although the striking of Coulson's answer was extreme, it was appropriate in this case, where the trial court's finding that Coulson lied is soundly supported by the record.

■ We therefore hold that the trial court did not abuse its discretion in imposing these sanctions.

Affirmed.

BIRD, J., agrees.

STROUD, C.J., concurs.