2009 Ark. App. 400

**J. Somers MATTHEWS, Appellant,**

v.

**Katherine MATTHEWS, Appellee.**

**No. CA 08–583.**

Court of Appeals of Arkansas.

May 20, 2009.

See also, 2007 WL 987805.

Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd., by: Sam Hilburn and Traci LaCerra, North Little Rock, for appellant.

Dover Dixon Horne, PLLC, by: W. Michael Reif, Little Rock, for appellee.

LARRY D. VAUGHT, Chief Judge.

Somers Matthews appeals the trial court's order increasing his present alimony obligation and striking, as a discovery sanction, his own motion requesting reimbursement for a previous overpayment of alimony. We affirm.

The parties were divorced in 1995. At that time, Somers was ordered to pay Katherine alimony in the amount of $4500 per month until September 1, 1997, when the alimony would decrease to $4000 per month until September 1, 1998, when the alimony would decrease to $3500 per month until September 1, 1999, when the alimony would decrease to $3000 per month until Katherine died or remarried. However, alimony was reduced to $1935 per month in May 1996, due to Somers leaving his employment at Stephens, Inc. Subsequently, alimony was increased to $3500 per month in March 2006, but this award was reversed by this court in April 2007, and the $1935 per month alimony was reinstated.

In June 2007, Somers filed a motion to modify the amount of life insurance he was required to maintain on his life; to terminate the charging order by which his funds

were held in the registry of the court; and to require reimbursement by Katherine of $12,520 in overpayments of alimony resulting from the reversal of the 2006 increase in alimony by this court. In response, Katherine filed a counterclaim for an increase in alimony, alleging that there had been a substantial change in circumstances that justified such an increase.

In September 2007, Katherine filed a motion to compel Somers to respond to interrogatories and requests for production of documents she had submitted to him in late June 2007; in response, Somers alleged that Katherine, too, had failed to respond to discovery requests submitted to her. The trial judge ordered Somers to provide the information requested by Katherine on or before September 21, 2007. On September 26, 2007, Katherine filed a second motion to compel, stating that Somers had furnished bank statements from May 2006, through July 2007, but had not furnished: (1) a copy of his 2005 federal and state income tax returns; (2) copies of his 2005 W–2, 1099, K–1 or other documents showing income received in 2005; (3) a copy of his 2006 federal and state income tax returns; (4) copies of his 2006 W–2, 1099, K–1 or other documents showing income received in 2006; (5) a copy of his affidavit of financial means; (6) copies of his bank statements from January 1, 2006, through March 2006; (7) copies of his cancelled checks and deposit slips from January 1, 2006, through present; (8) copies of his credit card statements from January 1, 2006, through present; or (9) copies of accountant work papers for 2005 and 2006. The trial court gave Somers until 4:30 p.m. on November 15, 2007, to furnish the above identified information to Katherine. On November 16, 2007, Katherine filed a third motion to compel, stating that Somers had still not provided: (1) his 2005 state tax return; (2) 2006 federal and state tax returns; (3) an affidavit of financial means; (4) bank statements from January 1, 2006, through March 2006; (5) copies of cancelled checks and deposit tickets for the checking account from January 1, 2006, through present; or (6) a Form 1099 from Sherwood Land Company, Inc. She alleged that she had provided Somers with all information requested of her, including medical records.

A hearing on Katherine's third motion to compel was held on November 29, 2007, one day before the hearing on the parties' pending competing requests for relief. At that hearing, Somers's counsel asserted that Somers was then at his counsel's office completing his affidavit of financial means. His counsel also stated that the 2005 state tax return had been provided; the 2006 tax returns had not yet been prepared; and that there were no bank statements for the checking account. Somers's counsel further conceded that there was no issue concerning Somers's ability to pay alimony and that he had always had the ability to pay alimony. As a result of Somers's failure to provide the requested information, the trial court sanctioned him by striking his motion requesting repayment of the excess alimony he had paid to Katherine. An order reflecting this sanction, as well as the finding that Somers had the ability to pay a reasonable amount of alimony, was subsequently entered on January 2, 2008. Additionally, Somers was ordered to pay a total of $1500 in attorney fees ($350 pursuant to an order to compel entered on November 19, 2007, and $1150 in the January 2, 2008, order).

The following day, Somers's motion to reduce the insurance amount and terminate the charging order and Katherine's request for an increase in alimony were heard. After the hearing, the trial court issued a letter opinion in which it found that the amount of alimony paid by Som-

ers to Katherine should be increased to $4500 per month. In reaching this decision, the trial court gave substantial weight to Katherine's rheumatologist, Dr. Columbus Brown IV, who testified that since the last hearing, Katherine's disability rating had increased from 60–70% to 80–85%; that her rheumatoid arthritis was presently not under control; that he was of the opinion that she was unable to hold a full-time job; and that while he recommended an IV treatment of Orencia to treat Katherine's disease, Katherine did not have the funds to avail herself of that treatment at this time. Likewise, the trial court gave no weight to Somers's vocational rehabilitation expert, Bob White, who testified that he believed Katherine could work. The trial court found that White did not interview Katherine and used outdated medical information in his assessment. The trial court further found that Katherine's management of her apartments, from which she earned about $1000 per month in income, was all the work Katherine was capable of performing and was all the income she was capable of earning in light of her education and her health problems.

Katherine testified about her rheumatoid arthritis, her medication, and the fact that she was limited in what she could do. The trial court found that Katherine's exercise with her personal trainer was determined by her doctor to be beneficial to her; that she was driving a vehicle that had 244,000 miles on it, that she was having mechanical problems with her vehicle due to its age, and that she needed a new roof on her house. The trial court also noted that Katherine had to use proceeds from an insurance settlement from a burglary to meet her monthly living expenses. The trial court found that Somers was in a far superior position to Katherine financially; that he clearly had the ability to pay alimony; that his income was substan-

tially more than Katherine's; that his resources were greater than Katherine's; that he had a college degree while Katherine did not; and that he was capable of working while she was not.

After deducting expenses attributable to the parties' daughter, who is attending Vanderbilt University, the trial court found that Katherine's monthly expenses were $5365 (not including the $400 monthly Orencia treatments recommended by Dr. Brown), and her income, including current alimony, was $3012 per month, leaving her a monthly deficit of $2353 (the order erroneously states that there is a deficit of $2335). The trial court then awarded an increase in alimony to $4500 per month, which would increase Katherine's total income to $5562 per month with expenses of $5365 per month. The trial court found that this amount would allow Katherine to meet her monthly living expenses and to meet extraordinary and unusual living expenses, and it would allow her to reasonably maintain her standard of living. An order to this effect was entered on January 2, 2008. This appeal followed.

### Alimony Increase

Somers's first point on appeal is that the trial court abused its discretion by increasing the amount of Katherine's alimony. In *Bracken v. Bracken*, 302 Ark. 103, 105, 787 S.W.2d 678, 679 (1990) (citations omitted), our supreme court stated:

An award of alimony is always subject to modification, upon application of either party. Such modification must be based, however, on a change in the circumstances of the parties. The burden of showing such a change in circumstances is always upon the party seeking the change in the amount of alimony. The primary factors to be considered in making or changing an award of alimony are the need of one spouse and the

ability of the other spouse to pay. An award of alimony is in the sound discretion of the chancellor, and we will not reverse such an award unless the chancellor has clearly abused his discretion. The purpose of alimony is to rectify the economic imbalance in earning power and standard of living of the parties to a divorce in light of the particular facts of each case. *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988).

In this case, there is no question that Somers has the ability to pay the amount of alimony ordered by the trial court; in fact, that was conceded by his counsel. Therefore, the question becomes whether Katherine has a need for additional alimony. We cannot say that the trial court abused its discretion in awarding Katherine an increase in alimony. Katherine is being treated for the progressive disease of rheumatoid arthritis, which her doctor testified has become worse since the last hearing. Her doctor is now recommending a new treatment in addition to her current treatments, but she is unable to pay for the treatment at this time. Furthermore, her doctor testified that it was his opinion that she was unable to hold a regular job. The trial court gave her doctor's testimony great weight. While Somers contends on appeal that according to his own expert, Bob White, Katherine could hold a job, the trial court specifically found White's testimony was not entitled to any weight. It is the province of the trial court to determine witness credibility, as the trial court is in the best position to make credibility determinations.

We note that the increase in alimony makes Katherine's monthly income exceed her monthly expenses on her affidavit of financial means; however, her affidavit did not include the $400 monthly Orencia treatments that Dr. Brown testified Katherine needed in addition to her other medi-

cations in an ongoing attempt to control her rheumatoid arthritis. The addition of that treatment would increase Katherine's monthly expenses beyond her monthly income. Additionally, it appears that in setting the $4500 monthly alimony, the trial court took into consideration both Katherine's need for a new vehicle at some point in time and some major home repairs that were going to need to be made.

Somers also makes other arguments against the alimony increase. He argues that the reason Katherine wants an increase in alimony is because she wants him to be responsible for their daughter's allowance and clothing at college. However, the trial court removed any expenses attributable to the parties' daughter in its computations, and Katherine still did not have enough income to cover her monthly expenses. He further argues that this increase in alimony is equivalent to a distribution of his non-marital property. However, payment of alimony after a divorce comes from the payor's separate property; therefore, the alimony payments from Somers to Katherine are necessarily paid from Somers's separate property.

*Discovery Sanction*

■ Somers's second point on appeal is that the trial court abused its discretion in striking his motion and denying him the right to seek reimbursement of the overpayment of alimony stemming from the 2006 appeal to this court in the amount of $12,520. We disagree.

■ When a party fails to obey a discovery order, the circuit court "may make such orders in regard to the failure as are just...." Ark. R. Civ. P. 37(b)(2). The Rule gives a non-exclusive list of examples of sanction orders. The list includes orders "striking out pleadings or parts thereof[.]" Ark. R. Civ. P. 37(b)(2)(C). Mr. Matthews's motion for

reimbursement was not a pleading as that term is defined by Rule of Civil Procedure 7(a). But, his motion contained a request for relief, and Rule 37(b)(2)'s general grant of sanction authority to the circuit court is broad enough to cover an order striking a motion. The imposition of sanctions for the failure to make discovery rests in the trial court's discretion, and the appellate courts have often upheld the trial court's exercise of discretion in granting severe Rule 37 sanctions for flagrant discovery violations. *Rush v. Fieldcrest Cannon, Inc.,* 326 Ark. 849, 934 S.W.2d 512 (1996). There is no requirement that a trial court make a finding of willful or deliberate disregard prior to sanctions being imposed for failure to comply with discovery requirements. *Coulson Oil Co. v. Tully,* 84 Ark.App. 241, 139 S.W.3d 158 (2003).

Somers argues that there was no flagrant discovery violation because many of the documents requested were not in his possession or did not exist. We do not agree. Katherine had to ask three times for documents; each time, Somers would provide a few of the documents. The day prior to the hearing, during the hearing on Katherine's third motion to compel, it was revealed that Somers was at that time in his attorney's office completing his affidavit of financial means. Somers cannot seriously argue that he did not have the information to complete his affidavit of financial means more than one day prior to the hearing where a request for an increase in alimony was being entertained. Surely he knew the extent of his income, the amount he owed creditors, and his average monthly expenses prior to that late date. His actions, indeed inaction, were a flagrant disregard of the trial court and its orders, his ex-wife, and the entire judicial system. We find no abuse of discretion in the trial court's proper use of this sanction.

Finally, Somers makes the passing argument in his brief that "to strike the request to be reimbursed the overpayment of alimony ignores this Court's directive from the last appeal." We disagree. Our order was not impugned; it was not addressed. The trial court never reached the merits of the issue of reimbursement because that motion, which was subject to discovery-violation sanctions, was stricken by the trial court under Rule 37 of the Arkansas Rules of Civil Procedure. The trial court did not reach the merits of this argument; neither can this court.

Affirmed.

ROBBINS, MARSHALL, HENRY and BROWN, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting.

I recognize that domestic relations cases are necessarily fact-intensive, but that does not excuse the wide variation in this court's jurisprudence in this area of the law. One need not look any further than the two appeals involving the parties that are before us today. In an unpublished case, CA06–680, 2007 WL 987805, hereinafter *Matthews I,* handed down on April 4, 2007, this court noted that Katherine's "Affidavit of Financial Means demonstrated that her income exceeded her expenses," so we reversed the trial court's decision to increase alimony. Today, the majority similarly notes that the increase in alimony "makes Katherine's monthly income exceed her monthly expenses on her affidavit of financial means," but instead of reducing the trial court's award of alimony as this court did in *Matthews I,* the majority invites Katherine to buy a new car and make home improvements.

While the majority's resolution of the first issue in this case is unsettling, its

resolution of the second point is untenable. This court's failure to enforce its own order betrays the majority's misunderstanding of the Arkansas Rules of Civil Procedure and countenances a blatant affront to the dignity and authority of this court.

After the mandate issued in *Matthews I*, where the court of appeals reversed an alimony award, effectively reducing Katherine's monthly support from $3,500 to $1,935, Somers petitioned the trial court to refund the excess alimony that he had paid his ex-wife, some $12,520. Katherine then *counterclaimed* for an increase in alimony. It is well settled that Katherine's *counterclaim* constitutes a separate and distinct cause of action. *Smith v. Edwards*, 279 Ark. 79, 648 S.W.2d 482 (1983); Ark. R. Civ. P. 13(b). The trial court abused its discretion by allowing Katherine to retain the $12,520 that this court clearly stated that she was not entitled to, under the guise of a "sanction" for failing to provide discovery in a *counterclaim* filed nearly two months after our mandate issued. This was not a "sanction" for a discovery violation, but a fine illegally imposed and paid directly to Katherine by the trial court, and a cleverly disguised contempt of this court by a trial judge.

It is true that Somers was less than diligent in answering the discovery propounded in Katherine's *counterclaim*. While Somers did produce bank statements and tax returns and made his accountant available for a deposition, Somers ultimately failed to produce a 2006 federal and state tax return, which he claimed had not been prepared; bank statements from January 2006 to March 2006, which he claimed did not exist; photocopies of canceled checks, which he claimed his bank did not retain; and a 1099 from the Sherwood Land Company, which he claimed he did not possess. However, it was established at the hearing that his failure to produce these documents did not in any way impair Katherine's ability to pursue her *counterclaim*. As found by the trial court, there was never a dispute as to whether Somers had the means to pay Katherine more alimony—the only contested issue presented by Katherine's *counterclaim* was whether her *needs* justified an increase in alimony.

Even though the requested documentation was irrelevant to Katherine's *counterclaim*—the trial judge expressly stated, "There's no question he's got the ability to pay"—the trial judge nonetheless decided to punish Somers for "dragging his feet" and not "playing by the rules." The trial judge granted Katherine *all* her attorney fees associated with her motion to compel, some $16,296.43, and denied Somers the opportunity to present any evidence concerning limits on his ability to pay increased alimony. Harsh as these sanctions were, I concede that both are authorized by Rule 37 of the Arkansas Rules of Civil Procedure. The trial judge, however, also struck Somers's petition for a refund of the excess alimony, which was based on a determination by the Arkansas Court of Appeals in an opinion that predated her counterclaim. This "sanction" exceeded the trial judge's authority.

Because the majority sloughs this sanction off as not being an abuse of discretion, once again, I feel compelled to remind the majority, as I did in *Evtimov v. Milanova*, 2009 Ark.App. 208, 300 S.W.3d 110, that jurisprudence has defined judicial discretion as

> discretion bounded by rules and principles of law, and not arbitrary, capricious, or unrestrained. It is not the indulgence of judicial whim, but the exercise of judicial judgment, based on facts and guided by law or the equitable decision or what is just and proper under the circumstances. It is legal discretion to

be exercised in discerning the course prescribed by law and is not to give effect to the will of the judge, but to that of the law. . . . A liberty or privilege to decide what is fair and equitable under the peculiar circumstances of the particular case, guided by the spirit and principles of the law.

While it is true that a trial judge has the authority to impose "severe sanctions," the majority has not cited any authority that empowers a trial judge to reach outside the current lawsuit in which the discovery violations occurred and dismiss a separate cause of action. The case cited by the majority, *Rush v. Fieldcrest Cannon, Inc.*, 326 Ark. 849, 934 S.W.2d 512 (1996), certainly does not address this issue. There, the "severe sanction" was the dismissal with prejudice of the appellant's products liability lawsuit when she repeatedly refused to provide a release of her medical records and disclose the identity of her expert witnesses *in that lawsuit.*

I cannot ignore that the so-called "sanction" is a direct affront to the authority of the court of appeals. In imposing this "sanction," the trial judge denied Somers his right to collect the excess alimony that the court of appeals said he was entitled to in *Matthews I.* Essentially, the trial judge has reinstated the order that this court has reversed.[1]

---

1. Somehow the majority's idea that the appellant was required to ask the trial court if it was indeed flouting the authority of the court of appeals and get a ruling on that question is untenable. Suffice it to say that in *Matthews I*, this court reduced the trial court's award of alimony from $3,500 to $1,935, yet rather than refund to Somers the money that he overpaid, the trial judge ordered that he forfeit it. On top of that, the trial judge added an additional $1000 per month to his ostensibly reduced alimony award, despite the fact that the majority acknowledges that the award is not justified by Katherine's support affidavit. I simply did the math.