Cite as 2020 Ark. App. 562

# ARKANSAS COURT OF APPEALS

DIVISION IV

**No.** CV-18-1047

| | |
|---|---|
| JEFFERSON HOSPITAL ASSOCIATION, WALTER JOHNSON, DAVID NIXON, AND FEDERAL INSURANCE COMPANY | **Opinion Delivered:** December 9, 2020 |
| APPELLANTS | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CV-17-16] |
| V. | |
| LEE DAVIS, M.D. | HONORABLE ALEX GUYNN, JUDGE |
| APPELLEE | REVERSED AND REMANDED |

## PHILLIP T. WHITEAKER, Judge

The appellants, Jefferson Hospital Association (JRMC), Walter Johnson, Dr. David Nixon, and the Federal Insurance Company, bring this interlocutory appeal from the Jefferson County Circuit Court's order striking their answer to the complaint filed by the appellee, Dr. Lee Davis, in a retaliation lawsuit. Our jurisdiction is pursuant to Ark. R. App. P.–Civ. 2(a)(4). For the reasons set forth in this opinion, we reverse and remand.

### I. *Factual Background*

Dr. Davis practices internal medicine and cardiology in Jefferson County. He was on the medical staff at JRMC from 2003 until 2008 when his medical privileges and staff appointment were revoked by JRMC. As a result of this revocation, Dr. Davis filed both a

federal lawsuit and a state lawsuit against JRMC and several doctors on staff at the hospital.[1] In his federal court litigation, Dr. Davis alleged that the revocation of his privileges was racially discriminatory[2] and violated due process, among other claims. In his state court litigation, Dr. Davis alleged that the revocation of his privileges constituted tortious interference with his business expectancy with patients, other physicians, and insurance companies.

In addition to the above-referenced litigation, and pursuant to a JRMC policy, Dr. Davis began the process of reapplying for medical privileges in 2013. JRMC allowed a physician whose privileges had been revoked to apply for reinstatement at least five years after revocation in a two-phase process. The first phase of the process was the "preapplication phase" and the second phase was the "application phase."

In the "preapplication phase," Dr. Davis initiated contact with JRMC seeking reinstatement of privileges. JRMC began to communicate with Dr. Davis to ascertain if he met threshold criteria before the hospital agreed to forward him an application for credentials. After several months of back-and-forth communication, JRMC denied Dr. Davis's request for an application. In a letter dated January 24, 2014, appellant Walter Johnson, the chief executive officer at JRMC, explained that "an application for appointment will only be sent to individuals who, according to the Medical Staff Bylaws and the Credentialing Policy, meet threshold criteria for appointment and clinical privilege

---

[1]Dr. Davis filed his federal lawsuit in 2009 and his state lawsuit in 2013. The disposition of these proceedings is not pertinent to this opinion.

[2]Dr. Davis is African American.

2

consideration." JRMC policy required that the applicant "was in active practice, in the specialty in which he is requesting privileges, for at least two of the four years preceding application." JRMC policy also defined an "active practice" as participating in call duties, serving on hospital and medical-staff committees, and demonstrating competence "that would be expected to provide quality care to patients in the hospital, including the emergency department." From material provided by Dr. Davis, JRMC determined that Dr. Davis did not meet the threshold criteria of having an "active practice." Mr. Johnson told Dr. Davis that "based on that information, and in light of the fact that your privileges were previously revoked in part because of serious quality concerns, you are not able to document a threshold level of demonstrated competence that would be expected for quality care at JRMC." Mr. Johnson's letter then concluded with the following paragraph:

> Under the Bylaws, another basic qualification for active physicians at JRMC is a demonstrated willingness and capability, based on current attitude and evidence of past performance, to work with and relate harmoniously to other staff appointees, hospital administration, and hospital employees in the cooperative, professional manner that is essential for maintaining a hospital environment appropriate to quality patient care. While your correspondence during this pre-application process has been civil on its face, it emerged in November that during the entire process, you were pursuing a $35,000,000 lawsuit against the hospital and several of its physicians. The lawsuit was filed on July 12, 2013, three days after you requested an application, but you never mentioned it or otherwise provided notice to the hospital. Rather, the Complaint was served in early November, when the service deadline was imminent, at which point Dr. Nixon [chair of the credentialing committee] mentioned it to you in his letter of December 11, 2013. I am aware that you have filed a motion to dismiss the lawsuit, which is based on claims that were previously dismissed in federal court. However, I note that you only asked the court to dismiss the complaint without prejudice, which if granted means you would be able to re-file the lawsuit within one year. Regardless of what the court decides, the fact is that with one hand you have engaged in the pre-application process with JRMC, professing good faith and cooperation, while with the other hand surreptitiously suing the hospital and members of its staff. This objectively demonstrates a lack of willingness or capability to work with and relate harmoniously to the hospital and members of its staff.

3

Subsequently, Dr. Davis filed lawsuits. He filed in the federal court alleging that JRMC's refusal to allow him to reapply for medical privileges constituted unlawful retaliation under 42 U.S.C. § 1981. The federal lawsuit ultimately was dismissed. Following the dismissal of his federal lawsuit, Dr. Davis filed the cause of action leading to this appeal, alleging JRMC's refusal to allow him to reapply for medical privileges constituted unlawful retaliation under Arkansas Code Annotated section 16-123-108 (Supp. 2019).

## II. *Procedural Background*

The timing and sequence of events between the parties is important in this appeal. Dr. Davis filed his complaint on January 13, 2017, just days before the statute of limitations expired. Dr. Davis named Mr. Johnson; JRMC; and Dr. Nixon, the medical director of credentialing at JRMC, as defendants. Additionally, for the purpose of tolling the statute of limitations, Dr. Davis sued twenty fictitious defendants alleging that John Doe 1 was JRMC's insurance company (as yet unknown) and John Does 2–20 were "persons or entities who participated in the decision to deny [Davis] an application for credentials." Along with the complaint, Davis's counsel filed an affidavit intended to comply with Arkansas Code Annotated section 16-56-125(c) (Repl. 2005) ("It shall be necessary for the plaintiff or plaintiff's attorney to file with the complaint an affidavit that the identity of the tortfeasor is unknown before [tolling] shall apply.").

Davis contemporaneously propounded interrogatories to the named defendants: JRMC, Mr. Johnson, and Dr. Nixon. Interrogatory No. 1 requested that the defendants "identify . . . each and every person of whom you are aware with knowledge of the facts and circumstances involved in this lawsuit."

4

The appellants promptly filed a motion to dismiss Dr. Davis's complaint alleging that it failed to state a claim upon which relief could be granted. While the motion to dismiss was still pending, on March 24, 2017, the appellants served their answers to the interrogatories that Dr. Davis propounded. In response to Interrogatory No. 1, which asked the appellants to identify persons with knowledge of the "facts and circumstances involved in this lawsuit," the appellants stated the following:

> Objection. Defendants object to this Interrogatory as premature. Discovery in this matter is in its preliminary stages, and Defendants have not yet ascertained the identity of all persons with knowledge of potentially relevant information. Further, this Interrogatory seeks information protected by Arkansas laws regarding quality-assurance and peer-review activities. Subject to, and without waiving said objections, Defendants state that Plaintiff, Walter Johnson, and David Nixon, M.D. have information potentially responsive to this Interrogatory. To the extent that Defendants become aware of the existence of additional individuals with information responsive to this Interrogatory, Defendants agree to supplement this Response according to the Arkansas Rules of Civil Procedure.

On March 29, 2017, Dr. Davis filed a second amended complaint[3] identifying John Doe No. 1 as appellant Federal Insurance Company, but John Does 2–20 remained unidentified.

Dr. Davis subsequently served notices of deposition to Mr. Johnson and Dr. Nixon, scheduled for May 12, 2017. The appellants promptly moved to quash the depositions and for a protective order, arguing that the depositions should not occur until after the circuit court entered a ruling on their motion to dismiss, which was still pending at that time. The circuit court did not rule on the appellants' motion to quash before May 12, 2017; consequently, neither Mr. Johnson nor Dr. Dixon appeared for a deposition on that date.

---

[3]He filed a first amended complaint on March 17, 2017.

5

In July 2017, the circuit court denied the motion to dismiss, and the appellants filed an answer denying the allegations in the complaint and pleading affirmative defenses. Shortly thereafter, Dr. Davis served notices of deposition on Mr. Johnson and Dr. Nixon for September 6, 2017. Mr. Johnson and Dr. Nixon both appeared for their depositions. From their sworn testimony, Dr. Davis learned, apparently for the first time, that other employees at JRMC had knowledge of the facts and circumstances of the hospital's decision to deny him an application. These other JRMC employees included Tom Harbuck, the executive vice president who oversees JRMC's risk-management department;[4] Dr. Amy Cahill, the chairman of the credentials committee; and Dr. John Lytle, the medical chief of staff. Dr. Davis also learned that Rick Beard, JRMC's legal counsel, and Allison Langston, JMRC's risk-management attorney, were privy to discussions concerning the denial of Dr. Davis's reinstatement request.

### III. *Motion to Strike*

Shortly after the depositions concluded, Dr. Davis filed a motion to compel and for sanctions pursuant to Rule 37 of the Arkansas Rules of Civil Procedure.[5] In his motion, Dr. Davis argued that the appellants failed to respond to discovery in good faith and that they had answered Interrogatory No. 1 untruthfully. Quoting Mr. Johnson's deposition

---

[4]Mr. Johnson testified that Tom Harbuck was the author of the January 24, 2014 letter that denied Dr. Davis's request for an application and that Johnson merely signed the document.

[5]The motion was styled as a second motion to compel and for sanctions. The first motion followed the first scheduled depositions when Mr. Johnson and Dr. Nixon failed to appear. Because the appellants appeal the order that grants only the second motion, we do not include a detailed discussion of the first motion here.

6

answers indicating there actually were other persons with knowledge of the circumstances, he contended that the response failed to disclose "multiple witnesses," leading to [Dr. Davis's] expending large sums of money and missing a statute [of limitations]." Citing *Coulson Oil v. Tully*, 84 Ark. App. 241, 139 S.W.3d 158 (2003), Dr. Davis asked the circuit court to strike the appellants' answer as a flagrant discovery violation. In response, the appellants argued that the motion should be denied because Dr. Davis failed to offer evidence that they answered in bad faith and failed to state that he attempted to confer in good faith prior to filing the motion. In addition, the appellants alternatively argued that the circumstances did not warrant striking their answer. According to the appellants, Dr. Davis did not demonstrate sufficient prejudice to warrant such an extreme sanction.

While the motion to compel and for sanctions was still pending, the appellants served supplemental responses to the interrogatories. In their supplemental responses to the first and second interrogatories, the appellants identified Tom Harbuck, Dr. John Lytle, Dr. Amy Cahill, Miriam Thrower (credentialing coordinator at JRMC), and Dr. Charles Mabry as having information relevant to the lawsuit.

The circuit court heard arguments on the motion. Dr. Davis argued that the appellants' answers to the first and second interrogatories were "factually untrue." In particular, Dr. Davis argued that the appellants' untrue answer to Interrogatory No. 1 provided on March 24, 2017, combined with Mr. Johnson's and Dr. Nixon's failure to appear for depositions in May, was intended to delay identification of additional defendants until after the time to amend the complaint with those defendants' real names—purportedly 120 days after the filing of the complaint had expired. According to Dr. Davis, the expiration

of that time is "where the prejudice [came] in." More specifically, he argued that he was "materially prejudiced" because without the additional defendants as parties to the lawsuit, the appellants could "point the finger at the empty chair and cause those six people [identified in the supplemental responses] to testify for the defense." He contended that he had "already been denied a fair trial" because "those people have no risk and could take the blame."

In response, the appellants argued that Dr. Davis could not demonstrate prejudice that warranted striking their answer. According to them, the additional people "did not have knowledge and could not be sued under Arkansas law because they were immune under the peer–review statute." Additionally, the appellants repeated their argument that the circuit court should deny the motion because Dr. Davis failed to include a statement that he attempted to confer with the appellants in good faith.

After the arguments concluded, the circuit court made the following ruling from the bench:

> I have heard the arguments from both sides. This is a very simple case. It seems to me that the defense has been trying to hide the ball. We are supposed to play fair. Both sides are supposed to disclose everything that they have. It seems as if the defense has been hiding the ball, and it has been intentional.
>
> . . . .
>
> Based on what I have heard today, I am going to award sanctions and strike the answer and award costs for [Dr. Davis].

The circuit court memorialized its oral ruling in a written order that found that the appellants' conduct prejudiced Dr. Davis in the following ways:

8

(a) by concealing potential defendants until the statute of limitations had passed; (b) by impairing plaintiff's ability to determine the order of and prepare for depositions; and (c) because persons who cannot be added as a party defendant may now testify in support of the defense without risk of civil liability for their actions.

The court likewise rejected the appellants' argument that the motion should be denied because it failed to state an attempt to confer in good faith, ruling that there is "no requirement of consultation for sanctions for failure to appear for a deposition" or "for failure to supplement." The court also suggested that an email requesting supplemental responses, which Dr. Davis's counsel sent to JRMC's counsel before filing the motion for sanctions, sufficed to meet the requirement. After unsuccessfully moving for reconsideration, the appellants now appeal the circuit court's sanction of striking their answer.

## IV. *Standard of Review*

The imposition of discovery sanctions lies within the circuit court's discretion. *Ocwen Loan Servicing, LLC v. Mickna*, 2017 Ark. App. 430, at 4. "The [circuit] court is in a superior position to judge the actions and motives of the litigants, and the [circuit] court's rulings should not be second-guessed." *Id*. Therefore, this court "reviews the imposition of sanctions, even severe ones, under an abuse-of-discretion standard." *Id*. A court commits an abuse of discretion when it acts thoughtlessly, improvidently, or without due consideration." *Id*. However, when a circuit court commits an error of law, "that in and of itself can also constitute an abuse of discretion." *Marks v. Saville*, 2017 Ark. App. 668, at 6, 550 S.W.3d 1, 5.

9

V. *Discussion*

The appellants argue that the circuit court abused its discretion in two respects. First, they say that the circuit court erred by finding that they engaged in any sanctionable conduct. Second, they argue that sanctions were not appropriate under Ark. R. Civ. P. 37(d) because Dr. Davis's motion fails to state that he "in good faith conferred or attempted to confer" with the appellants before filing the motion. The appellants also alternatively contend that even if their conduct was sanctionable, the circuit court abused its discretion by imposing the most severe of all available sanctions—striking their answer.

We agree with the appellants' second argument: Dr. Davis's failure to state that "he in good faith conferred or attempted to confer" was fatal to his motion. Because we reverse and remand on this basis, we need not reach the appellants' remaining arguments asserting that their conduct was not sanctionable or, alternatively, that Dr. Davis failed to demonstrate prejudice from the alleged discovery violation.

Rule 37(d) plainly provides that a motion seeking sanctions for a failure to answer interrogatories "*shall* include a statement that the movant has in good faith conferred or attempted to confer with the party failing to answer or respond in an effort to obtain such answer or response without court action." Ark. R. Civ. P. 37(d) (emphasis added). The word "shall" is mandatory, *Smith v. Fox*, 358 Ark. 388, 393, 193 S.W.3d 238, 242 (2004), and the purpose of the requirement is "to encourage litigants to resolve discovery disputes by informal means before filing a motion with the court." *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996) (applying federal rule). Consequently, parties seeking sanctions under Rule 37(d) "must adequately set forth in the motion essential

facts sufficient to enable the court to pass a preliminary judgment on the adequacy and sincerity of the good-faith conferment between the parties." *Id*. at 171. That is, a statement must include, among other things, "the names of the parties who conferred or attempted to confer, the manner by which they communicated, the dispute at issue, as well as the dates, times, and results of their discussions, if any." *Id*. In the absence of such a statement, a court simply cannot consider a motion for sanctions. *See In re Spears*, 265 B.R. 219, 223 (W.D. Mo. 2001). Here, Dr. Davis's motion does not contain any statement that he conferred, or attempted to confer, in good faith with the appellants.

Dr. Davis also asserts that he was not required to make a good-faith statement because Rule 37(d) requires conferment only before a motion seeking sanctions for *failures* to serve answers or objections to interrogatories.[6] Dr. Davis alleges that while the appellants' responses were false, they were served. He suggests that our decision in *Tully* supports dispensing with good-faith conferment when, as he alleges here, a litigant serves *false* answers. We are not persuaded by this contention. Dr. Davis stretches our decision in *Tully* well beyond its limits. We did not address the good-faith-conferment requirement in *Tully* or suggest that false answers should be treated differently than failures to answer under Rule 37(d). Indeed, Ark. R. Civ. P. 37(a)(3) provides that evasive or incomplete answers are treated as failures to respond for purposes of orders compelling discovery, and we treat false

---

[6]Dr. Davis also suggests that he was not required to include the statement because Rule 37(d) does not require it when, as here, parties fail to appear for depositions. We decline to reach that argument. The order striking the appellants' answer indicates that the only motion under consideration was the "motion to compel and for sanctions," which was limited to the appellants' allegedly false responses to the interrogatories.

11

or misleading responses and failures to respond as one and the same under Rule 37(d). *See Tully*, 84 Ark. App. at 251, 255, 139 S.W.3d at 164, 166. Certainly, the circuit court considered the appellants' responses as evasive. The court specifically stated that the appellants were attempting to "hide the ball." Thus, Dr. Davis was required to make a good-faith statement in his motion, and the circuit court abused its discretion when it struck the appellants' answer in the absence of this statement.

Finally, we conclude that the circuit court abused its discretion when it found that a two-sentence email communication that Dr. Davis later filed with the circuit court meets the requirements of Rule 37(d). It did not. Dr. Davis sent an email requesting that JRMC supplement its responses before Dr. Nixon's deposition. In this email, Dr. Davis did not warn that he would seek court intervention if the appellants either failed to act on his request or otherwise demonstrate a meaningful attempt to resolve the discovery dispute. *Cf. Hunter v. Moran*, 128 F.R.D. 115 (D. Nev. 1989) (holding that a letter demanding supplemental responses was insufficient under local federal rule). Furthermore, the rule does not allow for an email; rather, it requires litigants to make a statement of good-faith conferment in the motion itself. Therefore, because Dr. Davis's motion did not contain any statement that he had in good faith conferred, or attempted to confer, with JRMC about its alleged discovery violations, we hold that the circuit court erred in striking the answer of the appellants under Rule 37.

## VI. *Conclusion*

We reverse the order striking the appellants' answer and remand the case to the circuit court because Dr. Davis's motion to compel and for sanctions does not contain a

12

statement that he in good faith conferred, or attempted to confer, with JRMC before requesting sanctions from the circuit court.

Reversed and remanded.

ABRAMSON and MURPHY, JJ., agree.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Byron Freeland* and *Graham Talley*, for appellants.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*; *Sutter & Gillham, PLLC*, by: *Luther Oneal Sutter* and *Lucien Gillham*; and *McKissic & Associates, PLLC*, by: *Gene McKissic*, for appellee.